### McGARRY v. NEW YORK & H. R. Co.

*(Superior Court of New York City, General Term.   March 14, 1892.)*

1. MASTER AND SERVANT—INJURIES TO SERVANT—VICIOUS HORSE—EVIDENCE.
    Plaintiff, a hostler, in the employ of defendant street-railroad company, was kicked and bitten by a vicious horse while he was feeding it. *Held,* that notice of the vicious character of the horse to a superintendent of the stable, and to a superior hostler of lesser authority than the superintendent, having other hostlers un-

der him, was notice to the company, and that the question of notice to them was properly submitted to the jury.

**2. SAME—IMPUTED NOTICE.**

The fact that a stable-man had told the superior hostler that the horse was vicious was sufficient to put defendant on inquiry respecting its character, and, in the absence of inquiry, to charge it with notice of its viciousness.

**3. SAME—INSTRUCTIONS.**

The court properly refused to charge that if the horse, from the time of its purchase by defendant, had been properly fed and cared for by plaintiff, without having attacked or injured any one while being fed and cared for, defendant was justified in believing it safe, and that plaintiff could not recover.

**4. SAME—DUTY OF MASTER.**

The court properly instructed the jury that defendant owed a duty to plaintiff to instruct him as to the character of the horse.

**5. SAME—INSTRUCTIONS.**

The court properly refused to charge that plaintiff, in order to recover, must satisfy the jury that the horse had, prior to the accident, done mischief similar in character to that complained of, and that defendant knew it.

Appeal from jury term.

Action by Anthony McGarry against the New York & Harlem Railroad Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before SEDGWICK, C. J., and GILDERSLEEVE, J.

*M. H. Hurschberg,* for appellant. *Francis C. Devlin,* for respondent.

SEDGWICK, C. J. The action is for damages alleged by the complaint to have been suffered by the plaintiff from his being bitten and kicked by a vicious and dangerous horse, known by the defendant to be vicious and dangerous. At the time of the occurrence the plaintiff was employed by the defendant as hostler, and it was part of his duty to care for the horse. When he was injured he was in the stall, about to feed the horse.

The first position taken for the appellant is that there was no evidence that the horse was dangerous and vicious, or accustomed to attack and hurt any person handling and caring for him. On the circumstances in evidence, and on inferences that might be drawn from them, the plaintiff was entitled to the judgment of the jury on this point.

It is further argued that, if the horse was vicious, there was not the slightest proof that the defendant knew it. On the trial the plaintiff claimed that the relation of the employes of the defendant was of such a kind that their knowledge was the knowledge of the defendant. One of these, named Totten, was the superintendent of the stable, which contained about 1,000 horses. It was the duty of the defendant to the plaintiff, as its employe, to use a reasonable degree of observation to ascertain the character of the horses, and to prevent any horse that was dangerous being kept in a stall for the work of a man upon it. If Totten was in the performance of this duty upon the delegation of the defendant,—and that was a question of fact proper for the jury,—the jury might have also competently found that Totten was informed of the viciousness of the horse, and for that reason had caused him to be transferred from one floor to another. Under the circumstances proved, it should be held that Totten's knowledge was the knowledge of the defendant.

The other employe was one McQuaid. His employment did not have as wide a scope as that of Totten. In the stable he assisted in grooming horses, but he was not a mere groom. He had charge, with two or three men under him, of a gang of 16 horses. There were particular circumstances tending to show that he was a servant of more authority than the grooms. The evidence was such that the jury would be authorized to find that part of McQuaid's duties was to look generally after the horses in his charge, to notice whether any were vicious, and to cause its removal, or that a groom should not be sent into the stall with it. If such were the case, he was an agent of the department in this regard, and they were bound by his knowledge. There was testimony for the jury that McQuaid had knowledge that the horse was dangerous.

The learned counsel for the appellant objects that the judge left it to the jury to say whether the knowledge of McQuaid was the knowledge of the defendant. The objection would be well founded if the testimony incontrovertibly showed that the relation of McQuaid to the defendant was such that his knowledge could not be imputed to defendant. As we have already said, the jury could find that the testimony as to McQuaid's employment signified that he was in the place of the defendant, performing certain duties, which they were bound directly to the plaintiff to perform. The court was asked for defendant to charge the jury that, even if the men employed in the stable to keep and take care of the horses did know of the horse's viciousness, that fact did not charge the defendant with notice or knowledge. The court correctly refused to make this charge. The charge included McQuaid, and we have already held that, for the purpose involved, the jury might find he held the place of the defendant. It was objected to the counter-charge that if Tait, a stable-man, told McQuaid that the horse was vicious, that was sufficient to put the defendant on inquiry, and that, if the defendant did not inquire, the jury could find that they had notice that the horse was vicious. This charge seems correct, when viewed with that part of the charge that instructed the jury to find, in substance, whether it was part of McQuaid's duty to observe what was the character of the horse. The court made a specific reference to this, by saying that, if McQuaid was the person in charge of the horse, then such a notice to McQuaid would be notice to the defendant, and put it on inquiry. There was nothing objectionable in the charge that this inquiry, if made by McQuaid, would have undoubtedly resulted in ascertaining what sort of a horse it was. From the testimony in the case there is no doubt that McQuaid could have learned the character of the horse as it was.

The defendant excepted to the refusal of the court to charge that if the horse, from the time of his purchase by defendant, had been fed and cared for in the manner the plaintiff was required to feed and care for him, without, to the defendant's knowledge, attacking or injuring any person while so being fed and cared for, the defendant was justified in believing that it was safe for the plaintiff to feed and take care of him, and the plaintiff could not recover. The request does not seem to have been correct. If the defendant had no knowledge of whether the horse was dangerous in the stall or whether he was not, a belief that he was not dangerous would not have been justified.

There was an objection to the court instructing the jury to find whether the defendant owed a duty to plaintiff to instruct him with respect to the character of the horse in question. There was such a duty if, as the jury might find, the horse was dangerous, and known to be so by McQuaid, who put the plaintiff to work upon the horse. The employment was to attend to horses not vicious or dangerous. If the plaintiff were ordered to tend a horse that was dangerous and vicious, it was the duty of the employer to warn the servant of the character of the risk he was about to take, if it were known to the employer. The court refused to charge that the plaintiff, in order to recover, must satisfy the jury that the horse in question had, prior to the accident, done mischief similar in character to that complained of, and that the defendant knew it. The refusal to charge was correct; for it was sufficient to create liability on this point that what the defendant knew previously of the disposition and conduct of the horse would lead a reasonable mind to infer that the horse was likely to behave as he did in the present instance. The defendant requested a charge that the declarations of the men employed by the defendant in the stable and shop, as to the habit and disposition of the horse, are not competent or sufficient to charge the defendant with knowledge. This was charged by the court, and then there was a charge as to the effect of such declarations, if they were made to McQuaid. This subject has already been referred to. There was no error. Judgment and order affirmed, with costs.