## George H. Hammond Company v. William J. Johnson.

FILED NOVEMBER 8, 1893. No. 4650.

1. **Master and Servant**: APPLIANCES: NEGLIGENCE OF MASTER: LIABILITY FOR INJURY TO SERVANT. It is the duty of a master to furnish for the use of his servant in the course of his employment, proper and safe appliances and instruments for the performance of the services required. And if the master fail so to do, he is liable for such damages as are the direct result of such negligence, unless the servant himself is guilty of such negligence as contributes directly to the injury; and this rule applies irrespective of whether the appliances and instruments so furnished were animate or inanimate.

2. ———: FURNISHING SERVANT WITH VICIOUS HORSE: KNOWLEDGE: PERSONAL INJURIES: INSTRUCTIONS. Where a master, a corporation, furnished a horse for the use of its servant in the line of his employment, wherein said horse injured the servant, the jury were properly instructed that even if they should find the horse was vicious and dangerous, still that the plaintiff could not recover unless the jury further found from the testimony that the master, through its managers or officers, knew, or by the exercise of proper care and diligence *might have known*, of the vicious and dangerous character of the horse.

3. ———: VICE-PRINCIPAL: EVIDENCE: INSTRUCTIONS. The evidence in this case justified the jury in finding that the agent who, in the employ of a common master with the servant, directed the said servant to use the horse, whereby said servant was injured, was not his mere co-servant, but in giving the instruction aforesaid was a vice-principal, and the master was, therefore, properly held liable for the injuries received by the servant in obeying such instruction.

ERROR from the district court of Douglas county. Tried below before DOANE, J.

*Robert W. Patrick*, for plaintiff in error.

*A. S. Churchill*, contra.

RYAN, C.

This action was brought in the district court of Douglas county, Nebraska, by William J. Johnson against The George H. Hammond Company, a corporation, for compensation in damages in respect to injuries inflicted upon said plaintiff by a vicious, unbroken horse, of which plaintiff alleges that defendant, in whose employ he was, required plaintiff to take charge and drive in the course of his said employment. The petition, after alleging that the horse was vicious and unruly, sets forth that the defendant's manager, who well knew the vicious disposition of said horse, without giving plaintiff any notice of the existence of such disposition, required plaintiff to use the said horse in the course of his employment, and that plaintiff did use him as required, when the aforesaid horse, without any fault on plaintiff's part, began to kick and run, and became unmanageable and thereby inflicted the injury complained of, from which it resulted that plaintiff was for a long time confined to his bed, and suffered intense and long continued pain, and that at the commencement of this suit plaintiff was still suffering from his said injuries. There was also alleged the loss of a month's time, the expenditure of large sums of money for medical and surgical treatment rendered necessary by said injuries, which, with such other incidental results as followed from the injuries complained of, amounted to $10,550, for which plaintiff prayed that he might have judgment.

The answer admitted that plaintiff, while in defendant's employ, was furnished the horse of which complaint is made in plaintiff's petition, and alleged that said horse was not in any way vicious or unbroken, but that the plaintiff was not a skillful or careful driver of horses as alleged in his petition, and that it was owing to such lack of skill and want of care on his part that the alleged runaway of the horse and consequent injury to plaintiff was wholly due. There was in this answer the averment that defend-

Hammond v. Johnson.

ant had paid all expenses arising from the accident during the time that plaintiff was thereby incapacitated for work, and that the defendant had paid the surgeon's bill rendered necessary by the injury complained of, as well as for all loss of time which resulted from the injury to the plaintiff. Furthermore, the defendant answered that the injuries received by plaintiff were rendered serious by the misconduct of the plaintiff himself, in that, contrary to the advice of his attending surgeon, the said plaintiff persistently indulged in the use of intoxicating liquors.

There was a reply in denial of these matters affirmatively set up by way of defense to the petition of the plaintiff. Of the issues joined there was had a jury trial, which resulted in a verdict in favor of the plaintiff for $4,750. Upon hearing the motion for a new trial the plaintiff was required to enter a remittitur (as the condition upon which said motion would be overruled) of the excess of the verdict over $3,500; which remittitur was accordingly entered, and judgment thereupon rendered for the sum last named. To reverse this judgment the defendant files its petition in error in this court.

The evidence in this case showed without question that the horse of which complaint is made was a young, awkward, green horse, as some of the witnesses expressed it. That he was a large, powerful animal, there seems to have been no dispute, and it seems quite clear from the evidence that he was not naturally of a very vicious disposition, as that term is generally understood. He was not, however, a well broken animal when he was purchased by defendant in error's agent a short time before the accident, and his shortcomings in that direction seem to have been aggravated, rather than overcome, by the unskillful management of him by some of the employes of plaintiff in error, to whose care he was entrusted to be broken and handled. This was the condition of matters when this horse was intrusted to the defendant in error to be used upon the streets

of the city of Omaha, as part of a team which handled
and delivered to the regular customers of plaintiff in error,
butcher's meat, the preparing of which for market in that
condition was in plaintiff in. error's line of business.   The
agents of plaintiff in error were aware of the above de-
scribed untrustworthy character of the horse in question
at the time the defendant in error was required to drive
him, yet in no way imparted that information to the de-
fendant in error.   The evidence shows that the defendant
in error was a careful and skillful driver of horses, and,
notwithstanding the averments of the answer, no witness
questioned his qualification in that respect.   There was no
trouble with the horse the first day he was driven by the
defendant in error.   On the day following, the horse by
kicking got one hind foot over the tongue of the wagon,
but without further accident was gotten to rights.   This
was on Saturday, and the horse was not again hitched up
until the following Monday, April 7, 1890.   He then
became unmanageable, and again kicking while attempting
to run away, struck the plaintiff on the left leg below the
knee, thereby inflicting the injury complained of in this
suit.   At first there was rapid progress in the healing of
the injuries.   Subsequently, however, erysipelas developed,
causing great suffering and long confinement, as well as
greatly augmenting the amount necessary to defray inci-
dental expenses and surgeon's bills.   The payments
pleaded in the answer seem to have been made up almost
to the time of this complication, when they ceased, for the
apparent reason that the plaintiff in error regarded this
last phase of defendant in error's trouble as not at all at-
tributable to the accident suffered by him.

It is proper to remark in this connection that the jury
were fully justified in finding from the evidence that no
misconduct of the defendant in error in the forbidden use
of intoxicating liquors caused the erysipelas which super-
vened as above described.   The instructions refused and

Hammond v. Johnson.

given very fully considered all aspects of the case, but they are too voluminous for insertion herein at length. Complaint is specially made as to the first and fourth instructions given by the court upon its own motion. They were as follows:

"1. You are instructed that it was the duty of the defendant to furnish for the use of the plaintiff in its service proper and safe appliances and instruments for the performance of the services for which he was employed, and if it failed to do so, it would be liable for such damages as were the direct result of such negligence, unless the plaintiff was himself guilty of negligence which contributed directly to his injury."

"4. Even if you should find that the horse was a vicious and dangerous horse, still the plaintiff could not recover unless you should further find from the testimony that the defendant, through its managers or officers, knew, or by the exercise of proper care and diligence might have known, of the dangerous and vicious character of the horse."

The criticism of the first instruction is because it applies to animals the same rule as is ordinarily applied to inanimate machinery or tools in requiring that such as are furnished for use shall be safe and proper for the purpose for which they are furnished. It is probably true, as claimed by plaintiff in error, that the cases in which the duty of the master towards the servant in this regard have been adjudicated have been where the articles furnished were tools or machinery: No case has been cited holding the distinction claimed, nor can we conceive of any reason why it should exist. In the nature of things it is but right that the master, who may exact obedience to his orders, shall give his servant such information within his knowledge as will enable such servant to guard against injury to himself. If the servant is possessed of such knowledge he is bound at his peril to act accordingly, and it would seem that the

withholding by the master of such information as is necessary to enable the servant to provide for his own safety is correlatively at the peril of the master. It is immunity from injury that must be looked to, and it matters not from what source danger may impend, whether arising from the imperfections of machinery or the vicious and unsubdued propensities of animal nature, it is equally the duty of the master to forewarn, and thereby forearm, his servant against it.

The criticism of the fourth instruction is, that the plaintiff in error was thereby held liable, not only for the knowledge of facts which its officers and managers possessed, but as well for such knowledge of facts as by the exercise of due and proper care they might have known. The contention is, that this corporation should be held only for the actual knowledge of its officers and managers, their failure to possess knowledge not being imputable to the corporation. A corporation, however, can do nothing and be guilty of nothing except by its officers and agents. If the negligence of its officers and managers is not imputable to the corporation, it can be guilty of no negligence whatever. A corporation because of its being but an artificial entity, cannot with impunity neglect the performance of such duties towards its servants as their safety requires. It can see but with the eyes of its officers and agents, and if they refuse or neglect to use their eyesight when occasion demands, this furnishes no reason for a judicial adjudication that the corporation itself is blind. Its liability in this respect is such as would devolve upon a natural person under like circumstances, as to which the rule is laid down in section 349 of Wood's Law of Master and Servant. The following language is quoted from that section: "Where there are latent defects or hazards incident to an occupation, of which the master knows, or *ought* to know, it is his duty to warn the servant of them fully, and failing to do so, he is liable to him for any injury that he may sustain in consequence

of such a neglect; and this rule applies even where the danger or hazard is patent if through youth or inexperience or other cause the servant is incompetent to fully understand and appreciate the nature and extent of the hazard. It is the master's duty to warn him of any danger incident to the business, and if with such knowledge, he chooses to assume the risk and is capable of appreciating the hazards and of choosing and contracting for himself, the master is then absolved from liability for injuries resulting from the ordinary hazards."

There was an attempt to apply in argument the rule deducible from certain cases wherein the liability was sought to be fixed by reason of injuries suffered by strangers from the bites of dogs and kicks of horses. Such cases, however, are not governed by the same rule or reason as the case at bar, for the owner in such cases was not instrumental in placing the injured party in danger, and was therefore held liable only for such knowledge of the evil propensity of the animal complained of as he actually possessed. In the class of cases under consideration, however, the servant is not a mere volunteer. He is required by his master to assume the danger which the existence of vicious and uncurbed propensities implies, and if the master could, by the exercise of reasonable care, know of the existence of such propensities, his actual ignorance of them is no excuse in law.

It is contended that the verdict was excessive in view of the injuries shown by the evidence. As an original question viewed solely in the light of the written record, we might arrive at the same conclusion as contended for by counsel for plaintiff in error. The presiding judge, however, who heard the witnesses, saw and observed their deportment, and was consequently possessed of fuller means of knowledge than can possibly be accorded us, has considered this question, and in the exercise of his enlightened judgment required a considerable reduction of the estimate

of damages made by the jury's verdict.    We cannot say he should have required more.

Counsel for plaintiff in error insists that as the knowledge of the vicious and unbroken disposition of the horse was possessed solely by others in the employ of the plaintiff in error, that the defendant in error must be held to the rule which forbids a recovery by one servant based upon the negligence of his co-servant.    The evidence, however, is very satisfactory that the person who directed the defendant in error to take charge of and drive the horse which caused his injury was not a mere co-servant of the defendant in error.    When he directed the defendant in error to take charge of and drive this horse the evidence shows that the defendant in error hesitated, and rather sought to excuse himself from doing as required.    Thereupon he was informed by the person who made this requirement of him that he might either do that or quit the job, and under this kind of suasion he did as directed.    The language was the language of one in authority, and the evidence fully satisfies us that he was not a mere co-servant of the defendant in error, but was rather a vice-principal, and that therefore the rule contended for is not applicable.

There was presented in the record, though not argued, the fact that a continuance was applied for by the plaintiff in error on account of the alleged absence of a material witness.    The affidavit in support of this application was made by the attorney for the plaintiff in error, and therein was stated the fact that the absence of the witness came to affiant's knowledge only the day before the affidavit was made.    This probably accounts for the circumstance that in said affidavit the ultimate facts to be proved by the testimony of the witness were not stated, but that such matters as were stated were conclusions properly deducible from facts, rather than the facts themselves.    In this respect the affidavit was faulty, and hence there was no error in refusing the continuance asked.

This disposes of all the questions presented, and it results that the judgment of the district court is

AFFIRMED.