GEORGE C. BROWN vs. THOMAS GREEN, and HARRY F. GREEN,
trading as THOMAS GREEN & SON.

### Master and Servant—Evidence—Damages.

1. The plaintiff having confined his testimony as to the viciousness of the horse to the stable, the defendants were not permitted to show in reply that she was quiet when being driven around the city.

2. Plaintiff having been confined in his proof to viciousness of the defendant's mare prior to and up to the time of his accident, defendants were allowed to show by a witness who took the mare in charge two days after the accident what was her conduct at that time, as being sufficiently close to the time of the accident to show the vicious tendencies of the mare, if she had such ; the time, in the judgment of the court, that had elapsed since the accident not being long enough for any change to be effected in the character of the animal by training, etc.

3. A horse is vicious when its disposition or propensity is to do any act dangerous in its character to either persons or property, such as biting, kicking, striking with its forefeet, etc. And if any person shall continue to keep such a horse knowing it to have such propensities, he will be liable in damages for any injury inflicted by the horse by reason of any negligence on his part in the absence of any contributory negligence of the person injured. The gravamen of the action in cases of this character is the keeping of the animal, knowing it to be dangerous.

4. If a person voluntarily and unnecessarily provokes a vicious animal and thereby invites or induces injury, or having knowledge of the evil propensities of an animal voluntarily puts himself in the way of such an animal knowing the probable consequences, he is not entitled to recover.

5. If the owner of a horse places him in a club stable, maintained by himself and others for their benefit, and the manager of said stable has no other relation thereto than that of employee, in whose care and custody the horse was placed to feed, groom and harness, then there exists for this purpose the relation of master and servant between said owner and the said manager, and not the relation of bailor and bailee for hire ; and if the jury believe that said manager, acting in this capacity, was made the agent of the owner of the horse for the particular purpose of taking charge of the horse, then said manager's knowledge of the vicious character of the animal is in law imputed to be the knowledge of the owner. Or if the owner commits the care and custody of his horse, when being used, and not left standing in the stable, to a boy and thereby makes the boy his agent for the particular purpose of taking care of and using the horse in his employment, and while so charged with the care and use of the horse the boy obtain

knowledge of its vicious propensities, then in law the knowledge of the boy is the knowledge of the owner.

6. It is the duty of the owner of a vicious animal to so keep it that no injury shall occur without the active interference of a stranger or the contributory negligence of the party injured, and a failure to do this is negligence.

*(February 17, 1899.)*

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Peter L. Cooper, Jr.,* for plaintiff.

*Levi C. Bird* and *Andrew E. Sanborn* for defendants.

Superior Court, New Castle County, February Term, 1899.

ACTION ON THE CASE (No. 87, November Term, 1897), to recover damages for personal injuries received by plaintiff in assisting in harnessing the horse of the defendants, which horse was alleged to be vicious.

The evidence of the plaintiff was that the defendants, who were engaged in the grocery business in the City of Wilmington, owned a certain gray mare which was driven, by a colored boy named Henry, to the defendants' produce wagon. That the horse was kept at the Pioneer Club Stable on Orange street between Eighth and Ninth. That said stable was under the management of one Herdman, and that Thomas Green, one of the defendants, was a stock-holder in the same. That on the morning of August thirty-first, 1897, Herdman started to harness the horse at the request of the colored boy Henry, and as his helper was not present and the horse being unruly, Herdman requested George C. Brown, the plaintiff, who worked in a blacksmith shop on the opposite side of the street, to assist him in harnessing the horse. That Brown, although having frequently shod the horse in his blacksmith shop, knew nothing about the horse's bad traits, she having always been quiet while being shod by the plaintiff. That Brown went over to the stable and saw the horse and about that time Thomas Green, one of the defendants, came in. That Herdman had hold of the horse, and Brown was standing near the animal. That Green ran his hand down the horse's back and

said, "Whoa, Petty. Boys, she wont hurt you. Don't be afraid." That Brown then got hold of the bridle and Herdman went to put the twitch on when, to use the words of the plaintiff, "She reared up and struck me under the heart with her front feet, and you could see the print of it, the black mark right under my heart for six weeks afterwards. Then she threw me down and trod on me." * * * "She jumped on me on the right side and broke three of my ribs. The first thing I knew of myself was in the office of the stable where, when I came to my senses, I saw a friend of mine, Mr. Kyle, sitting with a fan fanning me. They sent after a physician and Dr. Miller came, and I was taken to my home in a cab. I was six weeks in bed. I suffered great pain during the time. I could not open my mouth to take a drink of water. I have not recovered from the injury yet. It affects me pretty bad this morning, and has since all this bad weather started in. There is a great difference in my feelings in dark and cloudy weather, when I have awful pain right there in the side and if I stoop it pinches me. There is a rib there that goes back and forth. I was earning $12 a week at the time. I am not able to do a good day's work now and I started a little place of my own, thinking it would be easier for me and if I could pick up a little business I would be able perhaps to hire a man to help me, but I am not fit to go into another man's shop and do a day's work for him. I am averaging now about $9.00 a week."

The witness, Charles H. Herdman, testified that the mare had been in his charge for about a year and a half, that at first he had no trouble with the animal, but about a month of two before the accident she began behaving badly when they would attempt to harness her. Witness could not say that the defendant had ever seen the mare behaving badly when being harnessed, except on the occasion of the injury to the plaintiff, but testified that he had told the colored boy Henry, who drove the mare for Mr. Green, to tell the latter that "the mare was bad and that she was not fit to be handled in the stable where there were other horses."

Another witness testified that he had seen the mare before

the time of the accident, when they were attempting to harness her, rear and pitch and drag the men off their feet. That she would strike at them with her feet, that he had seen them reach over from another stall to feed her, being afraid to go into her stall.

Mr. Bird for the defendants moved for a non suit, on the ground that assuming the mare was vicious there had been no proof to bring home the knowledge of that fact to the defendants.

Non suit refused.

Thomas Green, one of the defendants, was produced and Mr. Bird proceeded to question him with regard to how the mare acted when standing in front of his grocery store on Eighth street along the electric car tracks, stating that his object was to show that the mare was quiet when being driven around the city, thus negativing the plaintiff's proof as to viciousness.

Mr. Cooper, for plaintiff, objected to the proof as irrelevant; proof of the plaintiff having been confined to viciousness in the stable when being harnessed.

BOYCE, J :—Whatever proof there may have been as to the viciousness of the mare, it has been confined in this case to the stable, and we think the testimony which you propose to offer is inadmissible.

The defendants excepted.

David Ford, after testifying that his business was breaking colts, runaway horses, kickers, etc., in which business he had been engaged since 1857, was asked by Mr. Bird whether or not the mare in question had been placed in his charge by Mr. Thomas Green on September 2, 1897, two days after the accident, and what was her conduct on that occasion.

Objected to by counsel for plaintiff as not in reply to plaintiff's proof, which extended only up to the time of the accident.

BOYCE, J :—We think that the time within which the witness is about to testify is sufficiently close to the time of the accident to show the vicious tendencies of the mare, if she had

such.  He must testify as to the condition in which he found her at that time, and he must be held to that.  We admit this, thinking that the time which had elapsed between the time of the accident and the time when she was placed with the witness was not sufficiently long for any change in the character of the animal by means of training or anything of that kind.

The defendants excepted.

The defendants testified that they had never been notified by the colored boy who drove the mare, that she was in any way vicious ; that they had no knowledge of her being vicious ; and one of the defendants, Thomas Green, testified that he had simply noticed that when she was being bridled she would hold her head high.  He denied that he rubbed his hand down the mare's back at the time of the accident and spoke the words attributed to him by the plaintiff.

## PLAINTIFF'S PRAYERS.

The plaintiff prayed the court to instruct the jury in part as follows :

If the jury shall believe from the evidence that the said Thomas Green was familiar with the vicious nature of the horse, or by the exercise of ordinary diligence ought to have known of its vicious nature, and stood by and permitted the said George C. Brown to assist his agent in harnessing it without warning him of the nature of the said horse, and the said plaintiff was injured thereby, the said defendants were guilty of negligence and the plaintiff is entitled to recover.

*Ray on Negligence, 604–605.*

If the jury shall believe from the evidence that the said Thomas Green was familiar with the vicious nature of the horse, or by the exercise of ordinary diligence ought to have known of its vicious nature, and that he requested the said George C. Brown to assist in harnessing the said horse or stood by and assented to such request made by his agent, the said George C. Brown thereby became the agent of the said Thomas Green & Son, and it was the duty of the said Thomas Green to fully

advise the said George C. Brown of the vicious nature of the animal, and if he failed to do so, it was such negligence as would entitle the plaintiff to recover.

Where the knowledge of the vicious propensity of an animal is brought home to a servant or agent who has been placed in charge of the animal by the master, the latter will be chargeable with notice.

*Ray on Negligence, 624–625 ; Baldwin vs. Casella, L. R., 7 Exch., 325.*

If the jury believe from the evidence that the said Thomas Green, knowing the animal to be vicious, advised the plaintiff to take hold of it and advised him to be not afraid, that it would not hurt him, he was guilty of wilful negligence and deceit, and in addition to the damages enumerated in the foregoing prayer, the plaintiff would be entitled to recover vindictive or punitive damages, for where a defendant has been guilty of wilful or gross negligence—paying no sort of regard to the interest of others—the jury ought to give a verdict to punish the defendant for his conduct.

*Giles vs. Diamond State Iron Company, 7 Houst., 458.*

### DEFENDANTS' PRAYERS.

The defendants prayed the court to instruct the jury in part as follows :

It is necessary that the facts brought to the knowledge of the defendants, as to the mare, should indicate a disposition to commit injuries substantially like the one which forms the basis of the claim against them.

*2 Sher. & Red. Neg., Secs. 628, 630–631.*

That the jury cannot find a verdict for the plaintiff unless it is satisfied that the habit of the mare while being harnessed was of such a character as would be likely to inflict just such an injury as did happen ; and that it was of such a grave character that the defendants, knowing of such disposition of the mare, ought to have taken the proper steps to have guarded against it.

The owners of domestic animals, as horses, are not liable for injuries wilfully committed by them, unless he is proved to have had notice of the inclination of the horses to commit such injuries.

*2 Sher. & Red. Neg., 629; Van Lunven vs. Lyke, 1 N. Y., 515; 1 Thompson Neg., 182.*

That notice of the dangerous character of a domestic animal, as a horse, must be brought home to the defendants, and it is not sufficient in order to charge them with responsibility, that notice of such dangerous character shall have been given to a mere agent of the defendants, who had not the full charge of the animal.

BOYCE, J., charging the jury :

Gentlemen of the jury :—George C. Brown, the plaintiff, has brought his action to recover for personal injuries, the character of which you have heard, which he claims to have sustained while aiding and assisting in bridling and harnessing a horse at a club stable, in this city, on the thirty-first day of August, 1897, belonging to the defendants. He further claims that the horse was vicious in her habits, whenever an attempt was made at harnessing her, and that it was due to this vicious propensity of the animal that he received the injuries complained of.

A horse is a domestic animal and is for the most part a kind, gentle and docile animal. It is vicious when it has a disposition or propensity to do any act dangerous in its character to either persons or property, such as biting, kicking, striking with its forefeet, or is given to other bad and ferocious acts or tricks. And if any person shall continue to keep such a horse, knowing it to have such propensities, he will be liable in damages for any injury inflicted by the horse by reason of any negligence on the part of the owner in the absence of any contributory negligence of the person injured.

The gravamen of the action in cases of this character is the keeping of the animal, knowing it to be dangerous.

It is a general rule, with reference to any domestic animal,

that the owner thereof is not liable for injuries committed by it, unless it be shown that he had knowledge of its evil disposition and dangerous habits.

To entitle the plaintiff to recover, you must be satisfied from the testimony which has been produced before you, that the animal belonged to or was under the control of the defendants; that she had a vicious habit, likely to cause injury to any one attempting to harness her; that the defendants had knowledge of such vicious habit; and that the plaintiff did not voluntarily contribute to his injury.

For if a person voluntarily and unnecessarily provokes a vicious animal and thereby invites or induces injury, or having knowledge of the evil propensities of an animal, voluntarily puts himself in the way of such an animal, knowing the probable consequences, he is not entitled to recover.

*Muller vs. McKerson, 73 N. Y., 195; Marble vs. Ross, 124 Mass., 149; Cooley on Torts, 346.*

If you believe from the testimony that the horse was of a vicious disposition—that it possessed those habits and propensities which are dangerous in their character to persons coming in contact with her—and that the defendants had knowledge of such propensities, then they are liable in damages for injuries sustained from her, if the party injured was not guilty of contributory negligence. Knowledge on the part of the owner of the animal as to such vicious habits may be actual or constructive —the latter being gathered from all the facts and circumstances of each particular case, as well as from well established inferences or presumptions in law.

This court in a recent case (*Freidman vs. McGowan*),* not as yet reported, said: "*Scienter* or knowledge of the vicious disposition of a dog may come to a person in two ways: either from actual knowledge, from observation, or from reports made to the defendant of the vicious actions of the dog; or it may also be gathered or known constructively. For instance, if a dog is generally known to be vicious, and for a long time, being thus vicious, has been kept in the possession of the master or owner,

*See page 443.

it is a fact to go to the jury as to constructive knowledge." And in the case of *Barclay vs. Hartmann,** tried in this county, at the May Term, 1896, not as yet reported, the court said : "Notice may be of two kinds. It may be an actual notice * * * But that is not the only case in which the master may be liable. There may be a case in which there is no actual notice, but where there are certain facts and circumstances which being brought to his knowledge, imply notice ; that is, by reason of the duty that is imposed upon him, he reasonably ought to know."

If you believe from the evidence that Herdman was a mere manager for the club stable, maintained by the defendants and others for their benefit and convenience, and that he had no other relation thereto than that of employee, and as such manager that the horse was placed in the stable in his care and custody to feed, groom and harness, then there did exist for this purpose the relation of master and servant between the defendants and Herdman, and not the relation of bailor and bailee for hire, as was suggested by the learned counsel for the defendants. And if you believe that Herdman, acting in this capacity, was made the agent of the defendants for the particular purpose of taking charge of the horse, then Herdman's knowledge of the vicious character of the animal, if you find she was vicious and that thereof he had knowledge, is in law imputed to be the knowledge of the defendants.

Again, if you find from the evidence that the defendants committed the care and custody of the horse, when being used, and not left standing in the stable, to the colored boy Henry, and thereby made the boy their agent for the particular purpose of taking care of and using the horse in their employment, and that while so charged with the care and use of the horse the boy obtained knowledge of its vicious propensities, if you find she had such, then in law the knowledge of the boy is the knowledge of the defendants. It is the duty of the owner of a vicious animal to so keep it that no injury shall occur without the active interference of a stranger, or the contributory negligence of the party injured, and a failure to do this is negligence.

*See 2 Marvel's Del. Repts., 356.

*Earhart vs. Youngblood*, 27 Pa. St., 301; *Stomps vs. Kelley*, 22 Ill., 140.

You are the exclusive judges of the evidence, and you should carefully consider all the facts and circumstances surrounding this case, and determine it according to a preponderance of the testimony, and if after doing so, you should conclude that the plaintiff is entitled to recover, the measure of damages would be such a reasonable sum as will compensate him for the injuries which he has sustained, as well as for his pain and suffering in the past, and such as may come to him in the future as a result of the injury ; and also compensation for reasonable expenses for nursing and medical attendance, if you shall find any proof of such expenses.

If you conclude that the plaintiff is entitled to recover, we do not think this is a case for punitive or vindictive damages, but only for compensatory damages.

If you should be satisfied from all the evidence that the horse was not vicious, or, if so, that the defendants did not have either actual or constructive knowledge of her ferocious propensities, or that the plaintiff was not injured by the animal, or if injured, the injury was the result of his own negligence, then your verdict should be for the defendants.

Verdict for plaintiff for $150.00.