DOE *v.* BARNETT ET UX.

[No. 269A39. Filed October 29, 1969. Rehearing denied November 25, 1969. Transfer denied March 18, 1970.]

*G. Edward McHie, Ronald K. Gehring, Peters, McHie, Enslen & Moran,* all of Hammond, for appellant.

*John E. Leeney, Timothy P. Galvin, Jr., Galvin, Galvin, & Leeney,* all of Hammond, for appellees.

SHARP, J.—The Appellant-Plaintiff, Charles Doe, commenced this action by filing his complaint on September 2, 1966, the essential allegations of which are:

"1. That on September 6, 1964, the defendants owned certain real estate in St. John, Indiana, on which they resided; that on said real estate the defendants kept and maintained several horses.

2. That on said date the plaintiff and his minor son, Timothy Doe, age 7, were visiting on said premises owned and occupied by the defendants; that at said time and place the defendants invited the plaintiff and his said minor son into a certain corral located thereon and in which the defendants' said horses were then kept.

3. That shortly after the plaintiff and his said minor son entered said corral, one of the horses owned and kept by the defendants bit the said minor son of the plaintiff on the left side of his face; that said bite caused a severe laceration and caused severe and permanent damage to the nerves in his face and has left a permanent scar; that the nature and extent of said physical injury, and because of its location on the face of the said Timothy Doe, has, in addition to the pain and suffering and permanent physical damage caused thereby, has had an emotional and psychological effect on the said Timothy Doe.

4. That by reason of said injury, the plaintiff as the natural father and person liable for the support, maintenance, and care of the said Timothy Doe, incurred numerous and extensive hospital and doctor bills in the care and treatment of said injury, and will in the future be required to spend additional sums of money for medical care for said injury.

5. That as a direct and proximate result of said injury the plaintiff has lost the services of his said minor child all to the damage of the plaintiff.

6. That said bite and resultant injury to Timothy Doe and the resultant damages to the plaintiff, were the direct and proximate result of the negligence of the defendants in inviting the plaintiff and his said minor son into said corral when the defendants knew or in the exercise of reasonable care should have known that their said horse would bite the said Timothy Doe, and in failing to warn the plaintiff or his said minor son of the danger of entering said corral and being in the vicinity of said horse and that said horse

had a propensity for biting or would likely bite persons in said corral and in the vicinity of said horse."

On February 6, 1968, the Defendants-Appellees filed their Motion for Summary Judgment which had attached thereto the affidavits of each Appellee. The essential allegations of the affidavit of Appellee, Ben Barnett, are:

"3.  That on or about the 6th day of September, 1964, Esther Barnett and I were the owners of a certain real estate at R. R. 1, Box 460, Dyer, Indiana; and that on said date the plaintiff, Charles Doe, together with his minor son, Timothy Doe, visited our home as social visitors at the above address; that Esther Barnett and I on said date owned a certain Gelding horse which was confined within an enclosed area and that said Timothy Doe, while in said confined area, was bitten by said Gelding horse.

4.  That your affiant purchased said horse on or about April 11, 1964, from a Francis E. Schmidt, Jr. and that the said Francis E. Schmidt, Jr. never warned or advised your affiant that said Gelding horse was vicious in character nor that it had ever caused injury to any one prior to the date of the occurrence herein complained of.

## EXHIBIT A

5.  That from the date your affiant purchased said horse until the date of the occurrence herein complained of your affiant had no knowledge or information that said animal was vicious in character and that as your affiant is informed and variably believes said animal had never prior to the date of the occurrence caused or attempted to cause injury to any person."

The allegations of the affidavit of Appellee, Esther Barnett, are essentially duplications of those contained in the affidavit of Ben Barnett.

In response to the Appellees' Motion for Summary Judgment the Appellant filed the counteraffidavit of Charles Doe. The essential allegations of the affidavit of Charles Doe are:

"3.  That the affiant was present at the time of the incident alleged in the complaint herein; that at no time did

either of the defendants warn plaintiff or the children with him, including Timothy Doe, that the horses in the corral were eating or that the children should stay away from the horses, nor did they make any attempt to keep the children in any one area or away from the horses; that, on the contrary, the defendants brought and led the affiant and his minor children, including Timothy Doe, directly to and within a few feet of where the horses in the corral were eating.

4. That on September 6, 1964, and after the incident alleged in the complaint, the defendant Ben Barnett told this affiant that the horse which bit Timothy Doe, had on previous occasion shied and reared and appeared disturbed and reacted when the said Ben Barnett had brought said horse into the barn; and further said that he, Ben Barnett, attributed this to the fact that he was wearing glasses and that the reflection from the glasses caused the horse to so react.

5. That at the time of the incident alleged in the complaint, the said Timothy Doe was wearing glasses and at no time did either of the defendants warn affiant or Timothy Doe or anyone else present that one of said horses might react to a person wearing glasses."

The deposition of Appellees, Ben Barnett and Esther Barnett were taken on September 7, 1968, and were filed and published. These depositions were properly before the court when it considered and ruled upon Appellees' Motion for Summary Judgment. The Appellant has emphasized the following testimony contained in the deposition of Esther Barnett:

"Q. Did you ever go around the horses much while they were eating hay, or would you stay away from them while they were eating?

A. I can go around the horses or my children can go around the horses at any time, providing you let them know you're approaching them.

Q. That's something you would know because you're used to horses and have been around them for awhile?

A. We know, any animal, you can't startle.

Q. How do you let them know you're approaching?

A. Either talk to them, or touch them.

Q. What happens if you startle a horse and don't let them know you're coming towards them when they're eating hay?

A. Most of the time they would just continue eating, unless they were startled to the point where they thought they were being hurt or going to be hurt—they could kick out.

Q. Based on your knowledge of horses, it's a good idea when you're approaching a horse that's eating, to let them know you're coming towards them, is that right?

A. At any time whether eating or not."

On September 27, 1968, the trial court granted Appellees' Motion for Summary Judgment and this is the sole assignment of error here.

There are two basic considerations for our concern: (a) the substantive law with regard to the liability of the owner of a horse, and, (b) whether the record discloses any genuine issue as to any material fact so as to avoid summary judgment.

In *Klenberg* v. *Russell*, 125 Ind. 531, 534, 25 N. E. 596, 597, (1890), our Supreme Court stated:

"In S. & R. Law of Neg., section 629, it is said: 'But the owner of creatures which as a species are harmless and domesticated, and are kept for convenience or use, such as dogs, cattle, horses, and even bees, is not liable for injuries wilfully committed by them, unless he is proved to have had notice of the inclination of the particular animals complained of to commit such injuries. If, having had such notice, he neglects to keep them confined where no one can suffer from them while using ordinary care, he is liable for all injuries committed by them. And the owner of even a wild beast is not liable for injuries caused by it in a manner which no acquaintance with its nature could have led him to expect, except upon similar evidence of notice.'

As the complaint fails to allege that the cow had an evil disposition, such as would lead her to attack human beings, necessarily there is no charge that the appellant had notice of any such evil disposition. And as the wilful conduct of the animal in attacking the appellee was not such as the appellant had a right to expect or might anticipate, he is not responsible for the injury caused by such unexpected and wilful conduct.

In Cooley Torts, at page 403, it is said: 'But there are other mischiefs which may be committed by domestic animals that one is under no obligation to anticipate and guard against, because they are not the result of a general propensity, but are committed, if at all, by exceptionally vicious individuals of the particular species of animals. Thus, though every horse will roam into neighboring fields if not restrained from doing so, it is only in rare and exceptional cases that a horse will attack and injure those who come near him. Therefore, while the owner should anticipate and protect against trespass on lands by his horses, he is under no moral obligation to anticipate that a horse in which no such disposition has been discovered will suddenly make an assault upon and kick and bite some passer-by who chances to come within his reach. For this reason the keeper of a domestic animal is not in general responsible for any mischief that may be done by such animal which was of a kind not to be expected from him, and which it would not be negligence in the keeper to fail to guard against.' "

In *Indianapolis Abbatoir Co.* v. *Bailey,* 54 Ind. App. 370, 375, 102 N. E. 970, 972, (1913), this court stated:

"It is the settled law that the master must have knowledge, either actual or constructive, of the vicious character of an animal *mansuetae naturae,* such as a horse, before he may be charged with the duty of responding in damages for any injuries that may be inflicted by such animal. *Klenberg* v. *Russell* (1890), 125 Ind. 531, 25 N. E. 596; 4 Thompson, *Negligence* § 4041; *Geo. H. Hammond Co.* v. *Johnson* (1893), 38 Neb. 244, 56 N. W. 967; *Ward* v. *Danzeizen* (1903), 111 Ill. App. 163; *Finney* v. *Curtis* (1889), 78 Cal. 498, 21 Pac. 120; *Reed* v. *Southern Express Co.* (1894), 95 Ga. 108, 22 S. E. 133, 51 Am. St. 62; *Bennett* v. *Mallard* (1900), 33 Misc. (N.Y.) 112, 67 N. Y. Supp. 159; *West Chicago St. R. Co.* v. *Walsh* (1898), 78 Ill. App. 595; *Eastman* v. *Scott* (1902), 182 Mass. 192, 64 N. E. 968; *Mareau* v. *Vanatta* (1878), 88 Ill. 132; *Stumps* v. *Kelley* (1859), 22 Ill. 140; *Moss* v. *Partridge* (1881), 9 Ill. App. 490; *McHugh* v. *Mayor, etc.* (1898), 31 App. Div. 299, 52 N.Y. Supp. 623; *Clowdis* v. *Fresno Flume, etc., Co.* (1897), 118 Cal. 315, 50 Pac. 373, 62 Am. St. 238; *Murray* v. *Young* (1876), 12 Bush. (Ky.) 337; *Beckett* v. *Beckett* (1871), 48 Mo. 396; *Moynahan* v. *Wheeler* (1889), 117 N. Y. 285; *Van Leuven* v. *Luye* (1848), 1 N.Y. 515, 49 Am. Dec. 346; *Vrooman* v. *Lawyer* (1816), 13 Johns. (N.Y.) 339; *Dufer* v. *Cully* (1871), 3 Ore. 377; *Staetter* v. *McArthur* (1888), 33 Mo. App. 218. In 2 Sher-

man & Redfield, *Negligence* (4th ed.) § 629 it is said that 'the owner of creatures which, as a species, are harmless and domesticated, and are kept for convenience or use, such as * * * horses * * * is not liable for injuries willfully committed by them, unless he is proved to have had notice of the inclination of the particular animals complained of to commit such injuries.' If the servants knew that the horse was not ordinarily gentle, or had knowledge of his kicking propensities, such knowledge would be chargeable to the master. *McGarry* v. *New York, etc. R. Co.* (1892), 18 N.Y. Supp. 195; *Geo. H. Hammond Co.* v. *Johnson, supra*; *Brown* v. *Green* (1889), 1 Pennewill (Del.) 535, 42 Atl. 991; *Corliss* v. *Smith* (1881), 53 Vt. 532; *Clowdis* v. *Fresno Flume, etc., Co., supra*; *Muller* v. *McKesson* (1877), 10 Hun (N.Y.) 44; *Brice* v. *Bauer* (1888), 108 N.Y. 428, 15 N. E. 695, 2 Am. St. 454."

Also, in *Artificial Ice & Cold Storage Co.* v. *Martin, Admrx.*, 102 Ind. App. 74, 77, 198 N. E. 446, 448, (1935), this court stated:

"The rules which govern the liability of owners of domestic animals, for personal injuries is clearly and succinctly stated by the New York Court of Appeals in the case of *Hosmer* v. *Carney et al.* (1920), 228 N. Y. 73, 75, 126 N. E. 650, in the following language:

'He is not responsible for such injury unless the vicious propensities of the animal are known to him, or by the exercise of reasonable care the same could have been ascertained. (*Benoit* v. *Troy & Lansingburgh R. R. Co.*, 154 N. Y. 223; *Copeland* v. *Draper*, 157 Mass. 558.) If such animal be delivered by him to another, he must inform such person of the animal's vicious characteristics, so far as known, or ascertainable by the exercise of reasonable care. *McGovern* v. *Fitzpatrick*, 148 App. Div. 34. If such information be given, or the person to whom the animal is delivered knows, or before injury ascertains, the vicious character of the animal, the owner is not liable. *Douglas* v. *Scandia Coal Co.*, 161 Iowa 180; *Sidwell* v. *Economy Coal Co.*, 154 Iowa 475; *Cooper* v. *Cashman*, 190 Mass. 75. The liability of the owner is predicated upon his omission of duty in not imparting the information, but such omission does not render him liable if the negligence of the injured party contributed to the injury. Judge Cooley, in his work on Torts (3d ed.) at page 701, says, 'The doctrine of contributory negligence applies to the case of injury by animals,' and the same is

asserted in section 639 of Sherman and Redfield on *Negligence* (6th ed.), also in Labatt's Master and Servant (2nd ed.), § 1143, and has been recognized as a rule of law applicable to cases brought to recover for such injuries. *Loomis* v. *Terry*, 17 Wend. 496; *Williams* v. *Moray*, 74 Ind. 25; *Woolf* v. *Chalker*, 31 Conn. 121; *Bessemer Land Co.* v. *Dubose*, 125 Ala. 442. Obviously, there can be no negligence on the part of the owner in not instructing a person as to that which he already knows; and if, before injury, such person ascertain all the information which could have been imparted to him, he is thereafter charged with knowledge thereof. He cannot complain of dangerous conditions of which he has become as fully informed as the owner. This seems too plain to require the citation of authorities, but see *Douglas* v. *Scandia Coal Co., supra*, and authorities there cited.' "

The rules of liability of the owner of a domestic animal are clearly summarized in Vol. 1, West's Indiana Law Encyclopedia, § 17, *Animals*, as follows:

"While the owner of an animal which is, by nature, wild and ferocious is negligent in permitting it to roam at large, the owner of a domestic animal is not liable for injuries to a third person in absence of proof of previous knowledge of its vicious character, or proof that by exercise of reasonable care such knowledge could have been obtained, except for consequences which may be anticipated because of its well known disposition and habits. However, an owner has been held liable where domestic animals escaped and committed a trespass on the land of another though the owner had in fact no notice of such propensity.

The keeper of a vicious animal, known to be such is responsible for its safe keeping as much as if he were the owner, and he is liable for injuries to other animals and is liable to any person without fault who is injured by the animal, irrespective of negligence or fault in taking care of the animal."

These Indiana authorities are in accord with the general rules of liability found in Vol. 3, Corpus Juris Secundum, § 145, *Animals*, which states:

"The owner or keeper of a domestic animal is bound to take notice of the general propensities of the class to which it belongs, and also of any particular propensities peculiar to the animal itself of which he has knowledge or is put on notice; and insofar as such propensities are of a nature likely to cause injury he must exercise reasonable care to guard against them and to prevent injuries which are reasonably to be anticipated from them."

A vicious propensity is a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation. It is the act of the animal and not in the state of mind of the animal from which the effects of a dangerous propensity must be determined. A dangerous propensity may, for example, be deduced from very playful conduct. See 3 Corpus Juris Secundum, *Animals*, § 148, page 1250. These general rules as applied to horses are well stated in 4 Am. Jur. 2d, *Animals*, § 101.5 Supp., page 19, which state:

"The owner of a horse is frequently held liable for personal injuries caused by the animal's biting, kicking, trampling, or the like, when it is shown that he knew, or had cause to know, of its vicious propensities. Ordinarily, the two factors which must be shown in order for liability to attach are that the horse was in fact vicious, and that the owner knew, or had reason to know, of its dangerous nature; when these factors concur, the owner may be held liable for his negligence in failing to take measures to prevent damages arising from the vicious propensities of the horse, or, as some courts hold, as an insurer against damages caused by a known vicious animal without regard to care or negligence. Scienter may be established by constructive or imputed notice as well as by actual knowledge."

We would emphasize that we are not here attempting to expand the settled rules of liability announced in the Indiana cases and the other authorities cited in this opinion. We

would further emphasize that these rules of liability are based upon negligence and not strict liability.

The principles governing summary judgment which are applicable to this case have been set forth in recent decisions of this court. See *Wozniczka* v. *McKean*, 144 Ind. App. 471, 247 N. E. 2d 215 (1969), (rehearing and transfer denied); *Mayhew* v. *Deister*, 144 Ind. App. 111, 244 N. E. 2d 448 (1969), (rehearing and transfer denied); *Newcomb* v. *Cassidy*, 144 Ind. App. 315, 245 N. E. 2d 846 (1969), (rehearing and transfer denied); *Houston* v. *First Federal Savings and Loan Assoc. of Gary*, 144 Ind. App. 304, 246 N. E. 2d 199 (1969); and *Verplank* v. *Commercial Bank of Crown Point*, 145 Ind. App. 324, 251 N. E. 2d 52 (1969).

From the above cited cases decided by this court we summarize the applicable principles as follows:

1. § 2-2524 of Burns' Indiana Statutes Annotated is ■ patterned after Rule 56 of the Federal Rules of Civil Procedure and therefore federal case law and treatises interpreting Rule 56 are relevant.

2. The purpose of summary judgment is to provide a procedural device for the prompt disposition of cases in which there is no genuine issue as to material fact to be determined by the court or jury.

3. The trial of genuine issues as to material facts by pleadings, depositions, answers to interrogatories and admissions and affidavits is not permitted as a part of summary judgment procedure.

4. The burden is on the proponent of a motion for ■ summary judgment to conclusively demonstrate the absence of any genuine issue as to a material fact and that such proponent is entitled to a judgment as a matter of law.

5. If the proponent of a motion for summary judg- ■ ment has sustained the burden referred to in number 4, supra, then the burden is on the respondent to dem-

onstrate the existence of a genuine issue as to a material fact or summary judgment, if appropriate, will be entered.

6. Any doubt as to the existence of a genuine issue as to a material fact must be resolved against the proponent of a motion for summary judgment.

7. The contents of pleadings, depositions, answers to interrogatories, admissions and affidavits must be liberally construed in favor of the respondent to a motion for summary judgment and the facts asserted by such respondent supported by affidavit must be taken as true.

8. Summary judgment is seldomly appropriate in negligence cases where the standard of the reasonable man must be applied to conflicting evidence. Even in cases of undisputed facts it is usually for the trier of fact to determine whether the conduct in question met the standard of the reasonable man.

9. If there is a question as to the state of mind, credibility of witnesses or weight of testimony summary judgment should be denied.

10. Even where the trial judge may surmise that the proponent of a motion for summary judgment is likely to prevail at the trial, this is not a sufficient basis for refusing the respondent to a motion for summary judgment his day in court with respect to any genuine issues as to a material fact.

The above authorities of this court are consistent with the recent statement of our Supreme Court in *Central Realty, Inc.* v. *Hillman's Equipment, Inc.*, 253 Ind. 48, 246 N. E. 2d 383:

> "Although the material presented in the supporting affidavits may be extremely persuasive and entitled to great weight in arriving at conclusions of fact, the mere persuasiveness of the material does not erase the existence of factual issues which can only be decided by weighing evidence and drawing conclusions of fact. In short, although one supporting affidavit may be more per-

suasive than another, mere persuasiveness does not destroy the existence of a factual controversy. It is only when the supporting affidavits clearly establish that there is no controversy as to any material fact that summary judgment can be granted. Ind. Ann. Stat. § 2-2524, *supra; Kapusta v. DePuy Mfg. Co.* [249 Ind. 679, 234 N. E. 2d 487 (1968)], *supra; Fountain v. Filson*, [336 U. S. 681, 69 S. Ct. 754, 93 L. Ed. 971 (1949)], *supra.*

Summary judgment cannot be granted, however, when it is necessary to weigh the evidence contained in the supporting affidavits, draw conclusions of fact from that evidence, and thereby determine a preponderance of the evidence. In ruling on motions for summary judgment, the court may not decide questions of fact, but is limited to the sole determination of whether or not a factual controversy exists. In short, summary judgment is not a procedure for trying facts and determining the preponderance of the evidence. Rather, it is a procedure for applying the law to the facts when no factual controversy exists."

Considered in the light most favorable to the Appellant as the respondent to the Motion for Summary Judgment the record in this case fails to disclose that the Appellees are entitled to judgment as a matter of law. The record discloses a genuine issue as to material facts relating to whether this horse had vicious propensities which were known to the Appellees; whether the Appellees were in the exercise of reasonable care in respect to this particular child and an issue as to credibility of the Appellees as witnesses. Of course, it is for the trier of fact to determine if, in fact, the Appellant is entitled to recover.

Summary judgment was therefore improvidently granted in this case and it must be reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded. Costs v. Appellees.

Hoffman and White, JJ., concur; Pfaff, C.J., dissents without opinion.

NOTE.—Reported in 251 N. E. 2d 688.