# RAYMOND CAMPBELL v. PAUL SIEVER, d.b.a. HERTZ DRIV-UR-SELF.

91 N. W. (2d) 474.

July 25, 1958—No. 37,369.

*Schermer & Gensler* and *Irvin E. Schermer,* for appellant.

*Meagher, Geer, Markham & Anderson, M. J. Coyne,* and *O. C. Adamson II,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal by plaintiff from an order of the district court granting defendant's motion for a judgment notwithstanding the verdict.

Plaintiff, Raymond Campbell, was injured on January 10, 1955, when he slipped on a worn spot on the floor of a dry cleaning truck which his employer had leased from defendant, Paul Siever, d.b.a. Hertz Driv-Ur-Self.

Plaintiff was employed for many years by Beatty Zephyr Stores, Inc., herein referred to as employer, as a truck driver to deliver and pick up loads from a number of dry cleaning stores operated by his employer. At the time he sustained the injury he was using a truck leased from defendant in 1952. The leasing arrangement between plaintiff's employer and defendant provided that defendant would provide complete garage service, including inspection and storage space for vehicles, and would maintain vehicles in good repair, mechanical condition, and running order; that employer would deliver to defendant's repair shop vehicles needing repairs or such as requested by defendant for inspection and necessary repairs; and that employer's drivers would not make any repairs or adjustment to the vehicle. Defendant also agreed to make regular inspection of the vehicles, and employer agreed that his driver at the close of each day would report any and all faulty operation or other trouble which he had with the vehicle.

The truck leased to employer was a vanette delivery wagon. It had a steel floor which was referred to as "slippery." The floor of the front portion of the truck (the deck), where the front doors were located, was covered with battleship covering which looked like black sandpaper and contained abrasives to keep the driver from slipping. The truck could be entered by either of the two front doors or the back door. In connection with its use as a dry cleaning truck it was equipped in the rear portion with racks on either side running lengthwise for use in hanging freshly cleaned garments. Articles could also be piled along the floor. Unloading could be accomplished from the back door or the right front door, but not from the left front door because of the driver's seat. The back door was not used for unloading in the wintertime plaintiff said because the steel floor made it too slippery.

Plaintiff testified that in 1952 he was assigned a new truck and he picked it up at defendant's garage. He said he was instructed by defendant's operations manager, Mr. Edward Westerlund, as to the operation of the truck, the manner of handling repairs, and related matters. "He told me that all servicing, gassing, greasing, everything was to be done at the garage, and that I was to do nothing with the truck. I didn't even have tools in my truck to change a flat. They would come out and change the flat." He said he was also instructed by Westerlund that if anything was wrong with the truck he should make out a work order sheet and write down what he wanted done overnight; if repairs were necessary he would then leave the truck overnight. In that connection Westerlund testified that employer's drivers were told 'not to make any repairs on the truck.

After plaintiff began operating the truck, signs of wear began to appear on the battleship covering underneath the foot pedals at the edge of the top deck and the bottom step. He said that shortly before . Christmas in 1954 he fell out of the truck while it was being "gassed" at defendant's garage. He did not injure himself and had never slipped in the truck before. He testified that Mr. Rex Stubbs, a floorman employed by defendant, was putting gasoline into the truck at the time; that both he and the floorman looked at the worn spot; and that there was bare, shining metal about 9 to 12 inches long and ¾ inch wide exposed near the edge of the deck. Defendant's floorman told plaintiff, according to the latter's testimony, "That looks mighty dangerous. You better write that up on an order and have that repaired." The floorman denied the incident but admitted that it was possible that plaintiff might have fallen from the deck and that he did not recall it. Plaintiff claims that he then wrote out a repair order in which he requested patching or recovering of the worn area and said that he brought the truck back to defendant's garage that night and left it for repairs but when he came to get the truck the next morning no repairs had been made. He said that on that same afternoon he brought the truck back to the garage for a windshield wiper and that he told Mr. Stanley Smaciarz, defendant's shop foreman, that he had written an order for the repairs and was told by him that he would

have to wait a couple of days. Smaciarz testified that he might have put on the windshield wiper but did not remember any other conversation with plaintiff.

Between that time and the date of the accident, January 10, 1955, plaintiff said that he made two or three inquiries concerning the repairs from one of defendant's mechanics at the garage and was told that the material to fix the damaged spot had not yet arrived but that the mechanic would fix it when it arrived. The truck was never repaired before the accident.

Plaintiff testified that on January 10, 1955, at the time of the accident, he had returned to his employer's plant for the purpose of unloading soiled clothes which were contained in army duffelbags. He parked the truck with its right front door opposite the door of the cleaning room. The cleaning room door was of heavy steel, fireproof material, and he left it open while he carried the bags individually from the truck into the cleaning room. It was difficult to avoid the worn area because of the structural design of the truck, plaintiff's own height (6′ 1″), and the manner in which the duffelbags had to be carried in unloading them. He stayed off the back part of the truck because the metal floor was slippery and it was wet. Plaintiff had unloaded a number of duffelbags and was on his way out of the truck with one of the last ones at the time the accident occurred. As he was placing his right foot forward to step out of the truck and had the foot near the edge of the truck the heavy steel door of the cleaning room slammed, causing him to become startled. His foot hit the worn spot on the edge of the deck causing him to slip from the truck and sustain severe injuries.

Defendant's operations manager, Westerlund, testified that defendant reserved the right to determine whether repairs requested by a driver should be made. He also testified that defendant did not deem the worn area hazardous enough to warrant repairs.

A verdict was returned in favor of plaintiff, but defendant's motion for judgment notwithstanding the verdict was granted. This is an appeal from that order.

The legal questions raised on appeal are: (1) Whether defendant who leased a truck to plaintiff's employer and contracted to maintain

it in good repair is liable to an employee of the lessee only if the defect is a concealed one, and (2) whether the trial court was justified in granting judgment notwithstanding the verdict under the circumstances here.

■ It is apparent from the trial court's memorandum that it carefully considered the record before granting judgment notwithstanding the verdict and recognized that it presented considerable difficulty. It stated that it did "not favor changing jury verdicts properly arrived at, even though its decision as a trier of the facts might have been different than that of the jury, and in spite of the fact that the negligence of defendant, if any here, was very minute and the evidence that the injury, admittedly severe, caused to plaintiff was caused by omission or failure on the part of plaintiff almost speculative in nature, there is still, in the judgment of this Court, evidence on which a trier of the fact might have resolved those issues in plaintiff's favor." However, the court said that on what it considered to be the law in Minnesota it did not feel that there could be liability under the admitted facts.

The trial court recognized that under the contract between plaintiff's employer and defendant the latter was to maintain the vehicle involved in good repair, mechanical condition, and running order; and that the evidence was undisputed that neither plaintiff, nor any other employees of his employer, were to make any repairs whatsoever. It further stated that under the contract plaintiff's employer, upon accepting delivery, agreed that the vehicle was in good repair unless written notice of defects were given. The court went on to say that, while there was a dispute here as to written notice, the jury could certainly have resolved the dispute in favor of the plaintiff. It then took the position, however, that the law as stated in O'Brien v. American Bridge Co. 110 Minn. 364, 125 N. W. 1012, 32 L.R.A. (N.S.) 980, set forth the basis of liability in this type of case, citing also 13 Dunnell, Dig. (3 ed.) § 6995a. It was the opinion of the trial court that, as stated in the O'Brien case, the defect complained of must be of a noxious or dangerous kind and in such a state as would amount to a concealed danger to persons using it in an ordinary manner and with ordinary care. The court also cited Restatement, Torts, §§ 388 and 405, to the effect that those sections

recognize that as the general rule. It appears to us that the trial court considered the holding in the O'Brien case (to the effect that in that case one of the conditions necessary to liability was the presence of a concealed danger) and was persuaded to grant judgment notwithstanding the verdict here because of the visible nature of the defect.

In the O'Brien case the user of a public bridge brought an action against the builder for injuries sustained by reason of its defective nature. It was held there that, after acceptance of a bridge by a county pursuant to a contract for its construction with the defendant builder, plaintiff, a member of the public injured by the collapse of the bridge, could recover from the defendant despite the fact that he was not a party to the contract. The rule laid down in the O'Brien case was that in order to create a duty to the plaintiff two conditions were necessary: (a) That the thing be of a noxious or dangerous kind, and (b) that the builder had actual knowledge of its being in such a state of danger as would amount to a concealed danger to persons using it in an ordinary manner and with ordinary care. Such a rule was previously indicated in an earlier decision of this court in Schubert v. J. R. Clark Co. 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818, 32 A. S. R. 559, where the plaintiff was injured as a result of a concealed defect in a stepladder ordered by his employer from a dealer. This court held that if one engaged in the manufacture of goods not ordinarily of a dangerous nature so negligently constructs an article that by reason of such negligence it will endanger the life or limb of one using it, and if the manufacturer knowing such defects, and that they are concealed and not likely to be discovered, puts the article in his stock of goods for sale, he is liable for injuries caused by such negligence to one into whose hands the instrument comes for use in the usual course of business even though there was no contract relationship between the user and the manufacturer.

Subsequent to the O'Brien case, this court again said in Krahn v. J. L. Owens Co. 125 Minn. 33, 145 N. W. 626, 51 L.R.A. (N.S.) 650, involving a bean and pea thresher, that one who manufactures and sells an article not ordinarily of a dangerous nature which is calculated for use by others than the vendee may be liable to a person not the vendee

who uses the article in the usual course of his business for injuries due to defects which render the use of the article dangerous to life or limb.

It is our opinion that even though the defect was not concealed the rule in the O'Brien case does not apply here where defendant by agreement with plaintiff's employer had reserved control of the truck for the purpose of maintaining it in repair, knowing that plaintiff must use the truck in his work; and where the evidence is undisputed that neither plaintiff nor other drivers of his employer were to make any repairs whatsoever. The record shows that plaintiff fell out of the truck at defendant's garage shortly before Christmas in 1954, when he said that he slipped on the worn spot at the edge of the deck. There was testimony that at that time plaintiff wrote out a repair order requesting that the worn area be patched and that he brought the truck back to the garage that night and left it for repairs but nothing was done. There was also testimony, disputed by the defendant, that plaintiff was given to understand by certain of defendant's employees that the patching would be done when the material arrived. According to plaintiff's testimony he again inquired at defendant's garage two or three times prior to the January 10, 1955, accident concerning the repairs and was informed that the deck would be fixed when the material arrived.

There is also evidence here which the jury could have considered to the effect that the plaintiff took whatever affirmative action was necessary under the requirements of the lease to notify the defendant of the defect. Whether plaintiff used reasonable care in connection with the use of the truck, knowing of the defect, was a fact question for the jury.

In any event it is undisputed from the terms of the lease and from the testimony that plaintiff himself could do nothing about correcting the alleged defect except what he claims he did in notifying defendant of the defect and requesting the necessary repairs. It is also obvious that defendant must have known of the alleged defect prior to the date of plaintiff's injuries as Mr. Westerlund testified that the defendant reserved the right to determine whether repairs requested by the driver should be made. He was also questioned on cross-examination:

"Q.  Well, as I understand it, to boil this down, it was your opinion,

or it is your opinion that that deck did not need covering and never has needed covering since you got the car?

"A.   And to this day, it does not need it.

"Q.   And even if the driver had asked for it, you wouldn't have put it on? .

"A.   That's right."

We have reviewed and considered defendant's well-prepared brief with reference to a bailor and bailee relationship under the facts of this case. It is our opinion, however, that the situation here differs from the ordinary bailor and bailee case because of the contract between defendant and plaintiff's employer with reference to the maintenance of the vehicles and with reference to other provisions and restrictions to drivers in connection with repairs already referred to in this opinion.

■   The question is raised on appeal as to whether the trial court was justified in granting judgment notwithstanding the verdict. On a motion for judgment notwithstanding the verdict the single question is whether there is any competent evidence reasonably tending to sustain the verdict. The motion should be granted only when it appears that the evidence is conclusive against the verdict. Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588; Northwestern M. & T. Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077. Such motion accepts the view of the evidence most favorable to the verdict and admits every inference reasonably to be drawn from such evidence as well as the credibility of the testimony for the adverse party, and if the application of this rule in the light of the evidence as a whole discloses a reasonable basis for the verdict, the motion must be denied. Sorlie v. Thomas, 235 Minn. 509, 51 N. W. (2d) 592; Cofran v. Swanman, 225 Minn. 40, 29 N. W. (2d) 448.

There was evidence upon which a trier of fact might resolve the issues in plaintiff's favor.

In a memorandum attached to its supplemental order of July 25, 1957, the court made the following statement:

"* * * This Court is firmly convinced that if it is mistaken in allowing judgment notwithstanding a verdict, that the verdict rendered should stand, and no further trial is necessary as there is no question as to the

injuries suffered by the plaintiff or that they were substantial or that the amount awarded by the jury was in any way out of line. If there is liability, the amount awarded by the verdict should be allowed to plaintiff."

It is obvious from that statement that the trial court considered a new trial unnecessary in the event that it was mistaken in allowing judgment notwithstanding the verdict.

For the reasons above stated it is our opinion the judgment should not have been granted notwithstanding the verdict and that the verdict should stand.

Reversed.