[Civ. No. 26441.   Second Dist., Div. Two.   Feb. 25, 1963.]

KATHRYN B. BOCKER, a Minor, etc., et al., Plaintiffs and Appellants, v. ALMA CLYDE MILLER, Defendant and Respondent.

346

Wise, Kilpatrick & Clayton and George E. Wise for Plaintiffs and Appellants.

Moss, Lyon & Dunn, Gerold C. Dunn and Henry F. Walker for Defendant and Respondent.

FOX, P. J.—Kathryn Bocker, a minor, by her father as her guardian *ad litem,* and her father, Verlin G. Bocker, on his own behalf, brought this action against defendant for injuries sustained when defendant's horse, upon which the father and his daughter were mounted, reared up and came over backwards on top of them. The suit was based on two separate theories: (1) negligence and (2) ownership of a vicious and dangerous horse known to be such by the owner. After presentation of plaintiffs' case, the trial judge granted defendant's motion for nonsuit against both plaintiffs. As to the father, the grounds were (a) no evidence of the horse being "vicious," (b) no evidence of negligence, i.e., no evidence that the horse had propensities which would make him unsafe to ride by an adult of which the defendant knew and did not warn plaintiff father, and (c) if there were, plaintiff father was as a matter of law guilty of contributory negligence and assumption of risk. As to the daughter, the grounds were (a) no evidence that the horse was a "vicious" animal, and (b) no evidence of negligence.[1]

---

[1] The nonsuit as to the daughter was *not* based upon contributory negligence or assumption of risk.

■ "The granting of a motion for nonsuit is warranted ' . . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff.' (*Card* v. *Boms,* 210 Cal. 200, 202 [291 P. 190]; see also, *Golceff* v. *Sugarman* [36 Cal.2d 152 (222 P.2d 665)]; *Blumberg* v. *M. & T. Incorporated,* 34 Cal.2d 226 [209 P.2d 1], and cases there cited.) 'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.' (*Estate of Lances,* 216 Cal. 397, 400 [14 P.2d 768].) ■ In other words, while in most appeals it is the duty of the reviewing court to indulge every reasonable intendment in favor of sustaining the trial court, substantially the reverse is true when the appeal is from an order of nonsuit. In the latter case the appellate court must view the evidence as though judgment had gone in favor of the appellant, and order a reversal if such a judgment can be sustained." (*Raber* v. *Tumin,* 36 Cal.2d 654, 656 [226 P.2d 574].)

With these principles in mind, the factual picture we are called upon to consider is substantially as follows:

■ Defendant, who had known plaintiff father through a church teaching group, invited the father and his family to ride three horses owned by defendant. Although these invitations had been extended over a period of a year, no discussion was ever had between them as to the behavior propensities of defendant's horses.

On September 7, 1959, plaintiff father accepted defendant's invitation, and went riding with his two daughters and defendant on defendant's horses. The three animals were all geldings; the horse involved in the accident was a "single-footed, gaited," medium-sized animal, weighing 900 pounds.

The only discussion relevant to who would ride which horse was when the father asked to have the "gentler" of the horses for his younger daughter. Defendant told the father and his younger daughter to ride "Captain," because

he was the gentler. Defendant advised plaintiffs not to "run" Captain, as he might bolt.

After the party had continued along the trail for a period, a suggestion was made as to changing horses, either by defendant or by Kathryn, the younger girl. Defendant asked the little girl, who was then 8½ years old, whether she would like to ride "Rex" alone, the horse later involved in the accident. The father told defendant that the girl had never ridden a full-sized horse by herself and, if horses were exchanged, the father would ride with her.

When the group arrived at the accident area, the father and his younger daughter dismounted, as did defendant. The father, according to his testimony, ". . . got on Rex and Mr. Miller [defendant] boosted Kathryn up behind me and then he and Sherry [the older daughter] mounted their horses, and that's where we started to go south—home—and the horse reared up and the accident happened."

Just as the defendant put Kathryn up onto Rex behind her father, defendant said, "Hold Rex in. He has a tendency to rear." The father was already in the saddle at the time. Approximately 15 seconds later, when the other horses began to take off, Rex reared up and over, and fell on the father and Kathryn. During the 15-second period, the father had hold of the reins, but made no motions himself in the saddle. When the horse reared, he said "Whoa."

There was also testimony that defendant told Kathryn to keep her heels or feet out of Rex's flanks, and that she obeyed this admonition; there had been no such discussion with regard to any of the other horses.

In addition to testimony regarding the accident, plaintiff father also produced witnesses who testified to previous accidents involving Rex and other children. Defendant himself fell off Rex when the horse had tried to jump over some water or had slipped in some mud.

In this factual context it is apparent that there are some factual questions that the jury should have been allowed to determine: (1) whether the horse was "vicious," as that term is defined; (2) whether defendant knew of this viciousness, if it existed; and (3) whether, under the circumstances, it was negligence on the part of defendant not to have informed the father of the behavior propensity of the horse to a greater extent than he did, and at an earlier point in time than he did.

While the prior accidents were not of the same type

as that involved in the instant case, it was still a question for the jury to determine whether or not their cumulative effect was sufficient to indicate that the horse was unruly and might act as he did in the accident in question, and that defendant was aware of such propensities. "It is not the law that a vicious propensity means only the type of malignancy exhibited by a biting dog, that is, a propensity to attack human beings. Any propensity on the part of a domestic animal, which is likely to cause injury to human beings under the circumstances in which the party controlling the animal places him, is a dangerous or vicious propensity within the meaning of the law. (*Hillman* v. *Garcia-Ruby,* 44 Cal.2d 625 [283 P.2d 1033].)" (*Talizin* v. *Oak Creek Riding Club,* 176 Cal.App.2d 429, 435 [1 Cal.Rptr. 514]; see also, *Palmquist* v. *Mercer,* 43 Cal.2d 92 [272 P.2d 26]. Apposite here and persuasive of the view that defendant had knowledge that the horse might act as he in fact did is defendant's statement only seconds before the accident that the horse had ". . . a tendency to rear."

Since it cannot be said that a reviewing court would be required to reverse for insufficiency of the evidence had the jury returned a verdict for plaintiffs, we must reverse where, instead, a nonsuit has been granted against plaintiffs. (*Raber* v. *Tumin, supra,* at p. 656.)

Also, it cannot be said that the father was guilty of contributory negligence and assumption of risk as a matter of law. It was up to the jury, after listening to the evidence, to determine whether a reasonable man, after hearing defendant's warning about Rex's tendency to rear, would have removed, or started to remove, himself and his daughter from the horse within the 15 seconds which elapsed between the time of the warning and rearing of the horse.

The judgment is reversed.

Ashburn, J., and Herndon, J., concurred.