# ANNA SJODIN v. GEORGE LUND AND ANOTHER.

152 N. W. (2d) 718.

September 1, 1967—No. 39,859.

474

*Montague, Applequist, Lyons, Nolan, Donovan & Knetsch* and *Charles T. Barnes,* for appellant.

*MacDonald & Munger* and *A. Blake MacDonald,* for plaintiff respondent.

*Eckman & Eckman,* for defendant respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court.

On November 9, 1962, the plaintiff, a widow, then 71 years old, was injured in the basement of the building where she lived in. Duluth, when a discarded water heater fell upon her. The premises were owned by one of the defendants, George Lund.

In October 1962, plaintiff had reported to the owner that the water heater was leaking. He examined it, confirmed that it was leaking, and contacted the other defendant, Ray L. Paroli, a Duluth plumber, who agreed to replace it with a new one.

Plaintiff testified that the plumber came to the premises with his helper; that she opened the basement door to let them in; and that they disconnected the old heater and moved it over near a floor catch basin

to drain and replaced it with a new one. There is some dispute in the evidence as to whether the old heater was removed from the catch basin area to a nearby corner in the basement. The owner testified that he assumed from past dealings with plumbers that the old heater would be removed from the basement by the plumber. The latter said, however, that unless the owner requested the removal of an old heater it was his practice to leave it on the premises. In any event, the old heater was not removed from the basement.

It is undisputed that the owner did not return to the premises following installation of the heater, nor does it appear that any claim was made that he was informed that the heater was still in the basement before plaintiff was injured. Plaintiff's only contact with the owner after installation of the new heater was when she informed him the following day that the new heater was leaking. He contacted the plumber, who returned to the premises about 2 days later and remedied the leak.

The plumber testified on cross-examination under the rules that, after receiving a call from the owner in October 1962 to replace the leaky hot water heater, he and his helper went to the building (on October 16) and replaced the old heater with a new one. When asked what he did with the old heater, he said that he "[s]et it in the corner of the basement." He described the old heater as having approximately a 30-gallon capacity, being about 5 feet high, with a shipping weight of between 135 and 139 pounds, and having 3 legs. He also was asked, "You don't recall when it was, but you are sure you put it in that corner?" His reply was, "Yes." He was further questioned, "Now, you are sure you didn't put it over the drain, the drain into the sewer?" He replied, "Yes, I always put it over the drain to drain it, and then after you drain it then you move it." When asked if he put this one over the drain, he said he did it with every one he put in.

He also said he tested the new heater and it worked, and that plaintiff came down and he showed her how it operated. He said that when he came back 2 days later to tighten the leaky relief valve, the old heater was "[s]tanding in the corner where I put it."

Later, on direct examination, he stated that in installing the new heater

he first shut off the water supply; then put a hose on the old heater to drain the water into a catch basin until the tank was about half empty; and with his helper's aid then slid the heater up to the catch basin where it would drain faster. After placing the old tank over the drain the witness said they then installed the new one in the place from which the old one was removed, which took about 35 minutes, and then "proceeded to clean the basement up" and "moved the old heater from the catch basin over into the corner."

The case was tried before a jury, which rendered a verdict for the plaintiff against the owner *only,* but in favor of the plumber. Thereafter the owner moved for judgment notwithstanding the verdict or in the alternative for judgment in his favor and against the plumber for complete indemnification for the verdict against the owner, or, if these motions were denied, for a new trial on all the issues as to all parties. The motion was denied in all respects. Judgment was entered in favor of plaintiff against the owner who appeals.

He assigns nine errors on appeal. With respect to the first three, which he argues jointly, the owner contends (a) that the record does not support the jury verdict against him *only* and in favor of the plumber; (b) nor does it support the action of the trial court in refusing to order indemnification in his favor; (c) that the court erred in refusing to hold that his negligence, if any, was passive.

He argues that in order for the jury to find for plaintiff against either defendant it must have found that the proximate cause of her injuries was negligence in leaving the discarded heater in the basement; that there was no question that it was left in the basement by the plumber; and that no one claims that the owner had anything to do with placing it in what the jury found to be a dangerous position.

■ (a) An examination of the evidence in the light most favorable to the prevailing parties satisfies us that there was evidence to support the verdict against the owner and in favor of the plumber. There is evidence that the old heater stood in the basement from October 16 until November 9, when plaintiff was injured. The owner apparently takes the position that the plumber put the old heater over the drain and left it in the alleged dangerous place it was in until it fell on plaintiff, over 3

weeks later. The plumber testified, however, that he put it in the corner after it drained and when he came back 2 days later to fix the leak it was standing in the corner where he put it. Thus we have a question of fact for the jury. The court instructed that it was the owner's duty to maintain the area involved in a reasonably safe condition; and that this duty included a duty to use reasonable care to inspect, discover, and repair dangerous conditions. It also instructed the jury that it was the plumber's duty to put the discarded heater in a safe place and in a safe condition; and that his duty was to use reasonable care in placing the old heater, for the protection of one who might foreseeably be endangered by its placement. Also, that before plaintiff could recover she must establish that the owner and the plumber, or one of them, was negligent and that such negligence was the proximate cause of her injuries.

It is implicit from the verdict that the jury found the owner but not the plumber negligent. Under the record here we cannot disturb that verdict.

(b) With respect to the owner's claim of error on the part of the trial court in refusing to order indemnification in his favor, he argues that a party who incurs liability because of his failure, even though a negligent failure, to discover or prevent the misconduct of another, is entitled to indemnity from the other, citing Hendrickson v. Minnesota Power & Light Co. 258 Minn. 368, 104 N. W. (2d) 843. The owner contends that the most that could be said about him is that he failed to discover that the plumber had created a dangerous condition and, if that was his failure, then the plumber must indemnify him. He claims the only basis the jury could have had for assessing damages against either of the defendants was the condition created by the plumber.

It was his position that there was nothing inherently dangerous about replacing a water heater with another; that this was a duty which could be delegated by an owner of a building to another who was qualified to carry out this simple procedure; and that there was no requirement that he, the owner, should stand guard over the plumber to make sure that the latter did not create a danger by the way he performed a nondangerous assignment.

The plumber contends, however, that the owner is completely ignoring

one of the fundamental prerequisites for recovery by indemnity, namely, the liability to a third party (plaintiff) of the one (plumber) from whom indemnity is claimed. He argues that the court could not have ordered indemnity against him before his liability had been determined; the jury absolved him from liability; and, therefore, the owner is the sole tortfeasor. He contends that Hendrickson and other cases cited by the owner do not apply as those cases show that the party from whom indemnity was sought was a joint tortfeasor with the party claiming indemnity.

We held in Hendrickson that where an employee of a house mover was electrocuted by a high-power line and recovery for death was had against the power company which furnished employees to assist the house mover by preventing danger from power lines, a claim of the power company against the house mover for indemnity did not fall within any category permitting such recovery. We further stated in Hendrickson that the principles governing contribution and indemnity are similar, both in origin and in character, and that the basis for contribution is that one has discharged more than his share of a common liability. The court also said that a person who discharges a liability for a tort cannot recover contribution from a joint tortfeasor who is immune from action with respect to such tort because of some personal defense. Under the general reasoning in Hendrickson it appears to us that indemnity was not available to the owner here, where the jury absolved the plumber from any liability. It is therefore our opinion that the evidence does support the action of the trial court in refusing to order indemnification against the plumber in favor of the owner.

(c) We find no reversible error in the trial court's refusal to hold the owner's negligence, if any, was passive.

In Schwartz v. Macrose Lbr. & Trim Co. 50 Misc. (2d) 547, 559, 270 N. Y. S. (2d) 875, 890, the court said:

"Generally, a joint tort-feasor is entitled to indemnification from another joint tort-feasor only where its negligence can be denominated to be 'passive' in nature and the other tort-feasor's negligence is of the 'active' variety. The terms 'passive' and 'active' negligence represent

characterizations of conduct based upon a court's finding of varying and relative degrees of culpability where more than one negligent party is involved."

Here there was no need for the trial court to characterize the owner's negligence as passive since the jury found the owner to be the sole tortfeasor.

■ The court submitted the issue of assumption of risk to the jury but held that plaintiff was not guilty of contributory negligence as a matter of law. The owner contends that plaintiff assumed the risk of her injuries as a matter of law; that she was contributorily negligent as a matter of law; and that either of these contentions was sufficient to justify the court in ordering judgment in the owner's favor notwithstanding the verdict. On a motion for judgment notwithstanding the verdict, the single question is whether any competent evidence reasonably tends to sustain the verdict. Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588. An examination of the record here satisfies us that the question of whether plaintiff assumed the risk was for the jury. On the question of contributory negligence there was no showing in the record that at the time of the accident plaintiff was acting other than as a reasonable, prudent person. Thus the trial court properly ruled as a matter of law that plaintiff was not guilty of contributory negligence.

■ The owner contends that he should have been allowed to argue to the jury the proposition that even if he was liable to plaintiff he was entitled to complete indemnification from the plumber. The trial court took the position, which we think is correct, that claims relating to indemnification were matters of law to be determined by the court if the jury returned a verdict against both defendants. Therefore, since the court properly reserved the question of indemnification for itself, there was no error in its refusal to permit the owner to discuss the matter in final argument.

■ The owner contends that, as a matter of law, the basement where the injury occurred was not a "common area." He claims that the evidence here was clear that plaintiff was the sole user of the basement

at all material times and that the past history of other occupants of the premises could not be binding upon him because he had had ownership for a relatively short time.

It is our opinion under the evidence here that the trial court could conclude as a matter of law that this was a common basement under the supervision of the owner-landlord. There was testimony that this was a fourplex apartment building and that the basement was common to at least two of the apartments, if not all four; also that another tenant occupied an upstairs apartment during the time the owner was in possession of the premises. If so, the law is well settled that the owner owed plaintiff a duty to keep the premises in a reasonably safe condition.

◼ The owner's final assignments of error concern the propriety of the court's permitting a view of the premises and the alleged misconduct of one or more of the jurors during that view. As to the contention that the court erred in allowing the view, all that need be said is that the granting of a view is in the sound discretion of the trial court,[1] and under the record here no abuse of that discretion was shown.

◼ During the view one of the jurors discovered the water heater in the coalbin. The trial judge, who was present with the jury, upon being informed of this immediately instructed the jury that they were to disregard seeing the water heater and strike it from their minds. The court in its charge to the jury stated:

"In viewing the premises which the Court permitted you to do, the only purpose was to acquaint you with the layout so that you could better understand the evidence. This view was not to gather evidence. Your deliberations may only consider the sworn testimony of the witnesses and the exhibits."

In Briggs v. Chicago G. W. Ry. Co. 248 Minn. 418, 80 N. W. (2d) 625, we stated that although it was misconduct for jurors to take an unauthorized view of the scene of an accident or of an instrumentality involved in an accident, a new trial should not be granted for such misconduct if the trial court was reasonably certain that no prejudice re-

---

[1] State v. Gardin, 251 Minn. 157, 86 N. W. (2d) 711. See, also, Minn. St. 546.12.

sulted. We also said that the duty of determining whether such misconduct was prejudicial rested primarily upon the trial court and its decision thereon would be reversed only for an abuse of discretion.

We find that the juror's misconduct was not prejudicial to appellant in light of the court's admonishing remarks directed to that juror and to the entire jury.

Affirmed.