## DOROTHY E. BROWN v. ARTHUR SCHUSTER, INC., AND ANOTHER.

217 N. W. 2d 850.

May 10, 1974—No. 44271.

*MacIntosh, Cairns & Commers* and *Ronald M. Michaelson,* for appellant.

*Cousineau, McGuire, Shaughnessy & Anderson* and *H. A. Cousineau, Jr.,* for respondents.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court.

SCOTT, JUSTICE.

This is an action to recover damages for a knee injury sustained by plaintiff, Dorothy E. Brown, as a result of an accident occurring on October 2, 1968, at the plaintiff's place of employment. Plaintiff's employer was not made a party to the action. She alleged that she had stumbled and injured her knee because defendants, Arthur Schuster, Inc., and Floor Covering Service Co., had installed carpeting in a negligent manner. A special verdict was returned by the jury finding that the defendants were 100-percent negligent in the installation of the carpeting, that the plaintiff was not contributorily negligent, and that the defendants' negligence was the proximate cause of the plaintiff's injuries. Damages were assessed in the amount of $18,000. The trial court issued an order granting judgment for defendants notwithstanding the verdict and granting a new trial if the order granting judgment n. o. v. is vacated, set aside, or reversed. Plaintiff appeals from the judgment entered in favor of defendants. We reverse and order judgment on the verdict.

Plaintiff commenced employment for Terrace Estates Nursing Home in February 1967 and functioned as an assistant to Mr. Phillip Cormican, who acted as the administrator for the nursing home until December 31, 1968. Plaintiff's employment terminated on January 4, 1969. Defendant Arthur Schuster, Inc., had contracted, among other things, to furnish and arrange for

installation of carpeting in the nursing home. The subcontractor hired to complete the actual installation was defendant Floor Covering Service Co. The entire dispute revolves around the carpeting installed in Cormican's new office.

Plaintiff testified that she had worked for the nursing home for approximately 20 months before the accident. She claimed that the accident occurred as she was walking near Cormican's desk and that her foot slid when the carpet "gave way" beneath it. The carpet bunched beneath her, and although she did not fall, her left knee was twisted when her heel caught the carpeting. Her testimony was qualified by statements that it "seemed" as though the carpet had slipped and that it "seemed" as though her heel had caught on something. Plaintiff was wearing narrow-heeled shoes at the time of the accident.

She further testified that she first became aware of the defective condition of the carpet when Cormican moved into his new office, which she thought had occurred early in 1968. Cormican stated that the move might have been in 1967, but later equivocated by stating that it might have occurred during 1968. Plaintiff testified that she had experienced no difficulty in traversing the carpet in Cormican's office prior to the accident.

Cormican evidenced some uncertainty as to the date the carpeting was laid. He conceded that, although he had noticed no particular problems with it, he did remember that the carpet around his desk area was rumpled. Also, he recalled that defendants returned several times after the carpets were laid to repair and restretch them. He testified also that although he presumed they had worked in his office, he could not recall any specific restretching done to that particular carpeting.

Two additional witnesses testified that although the carpet was loose, wavy, and buckling during the summer of 1968, neither had experienced any difficulty in walking across the carpeted floor.

Monroe Kronick, president of defendant Floor Covering, stated that his business records indicated that the particular car-

peting was installed in March 1967. He described the general method of installation and stated that stretching is done to prevent loose carpeting. Further, he said that the company guarantees "the maintenance of the carpet as far as installation is concerned * * * any installation imperfections that show up within one year, we'll take care of * * * we have it set up as one time or one year." He was unable to recall whether Schuster informed him of any complaints regarding Cormican's carpet, but did remember that it had been necessary to restretch other areas of carpeting throughout the nursing home. Kronick also testified to various temperature and use conditions which may necessitate restretching.

Another witness recalled a conversation in July 1968 in which Mr. Cormican allegedly asked Schuster, "When are you going to get the carpeting in my office stretched?" and Schuster replied, "When I get around to it." Neither of these two men could either deny or specifically recall this particular conversation.

As a result of the accident, plaintiff sustained an "internal derangement of the knee," accompanied by swelling caused by fluid which required aspiration. She was admitted to Midway Hospital on January 24, 1969, underwent surgery on January 25, and the diagnosis was confirmed. The postoperative care included further aspiration to relieve swelling. On September 26, 1969, an orthopedic surgeon diagnosed her condition as "chronic synovitis, secondary to injury and subsequent surgery," with a 15-percent partial permanent disability.

It was stipulated that plaintiff's hospital bill of $807 and her doctor bill of $761 were reasonable and directly related to the accident in question. There also was testimony that she had earned approximately $600 per month prior to the accident and that her 6-month convalescence prevented her return to her job during that period. She stated that she continues to experience pain and swelling in her knee, that she is no longer able to swim, and that her household and garden activities have been restricted.

The learned trial court stated in the memorandum supporting the order granting judgment notwithstanding the verdict:

"No evidence was submitted even remotely suggesting that the installation of the carpet was negligently performed; or that it was defective when turned over to the Nursing Home; or that its condition as described by plaintiff existed at the time of such turnover; or that its condition as described by plaintiff was caused by negligent installation; or that it was made to appear more likely that the said condition was negligent installation rather than one of a number of possibilities, among them being atmospheric conditions, scrubbing, vacuuming, cleaning, moving furniture, moving equipment, and foot traffic."

He further stated, "If I am in error in granting judgment notwithstanding the verdict, the defendants' motion for a new trial is granted on the grounds that the verdict is not justified by the evidence and the verdict is excessive."

To determine the propriety of an order for judgment notwithstanding the verdict, the applicable standard is whether there is any competent evidence reasonably tending to sustain the verdict. Sjodin v. Lund, 277 Minn. 473, 152 N. W. 2d 718 (1967); Peterson v. Minnesota Power & Light Co. 206 Minn. 268, 288 N. W. 588 (1939). This court has stated that a motion for judgment notwithstanding the verdict admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony for the adverse party. Fisher v. Edberg, 287 Minn. 105, 176 N. W. 2d 897 (1970). Unless this court is able to determine that the evidence is practically conclusive against the verdict or that reasonable minds could reach but one conclusion against the verdict, the order granting the motion for judgment notwithstanding the verdict cannot stand. Campbell v. Siever, 253 Minn. 257, 91 N. W. 2d 474 (1958); Nelson v. Holand, 272 Minn. 522, 139 N. W. 2d 518 (1965).

The trial court was rightfully concerned with the absence of strong evidence of negligence in the installation of the carpeting.

However, when applying the established standards to test the validity of a judgment notwithstanding the verdict, we must conclude that there is sufficient competent evidence to allow the jury to infer that the carpeting was installed negligently by defendants. Therefore the evidence does not compel the granting of the motion against the jury's verdict.

This court, in McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 341, 154 N. W. 2d 488, 502 (1967), stated:

"It is at once evident that if we agree with defendant we are placed in the untenable position of having held the evidence adequate to sustain the verdict while at the same time permitting a new trial on all the issues to occur because the trial court in the exercise of discretion, as urged by defendant, presumably found the verdict not justified by the evidence. Complicating the matter is defendant's omission to assert before this court any claim that the order [granting a new trial] could be sustained on the ground that it was based exclusively upon errors of law prejudicial to defendant or that the damages awarded were excessive for reasons requiring a retrial on all issues."

We held that the order granting a new trial was subject to discretionary review by this court, and we directed judgment to be entered upon the verdict. The case before us presents this court with a very similar situation. In light of this, we reverse, with directions to enter judgment upon the verdict.

Reversed.

OTIS, JUSTICE (dissenting).

For the reasons stated by the trial judge, I am of the opinion the evidence does not support the verdict and would affirm.

MR. JUSTICE PETERSON, following oral argument, withdrew from consideration or decision of this case.