**E.L.E.S.C.O., Appellant,**

v.

**NORTHERN STATES POWER COMPANY, Respondent.**

No. C7–85–94.

Court of Appeals of Minnesota.

July 2, 1985.

Review Denied Sept. 19, 1985.

Wayne Holstad, White Bear Lake, for appellant.

Jack F. Sjoholm, Jr., Minneapolis, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

Appellant E.L.E.S.C.O. brought this action against respondent Northern States Power Company for breach of contract to purchase 10,000 tons of coke. A jury found N.S.P. breached the contract and awarded $49,500 in damages. The trial court granted respondent's motion for judgment notwithstanding the verdict, and E.L.E.S.C.O. brought this appeal.

## FACTS

In late 1979, Earl Wetherbee, appellant's proprietor, offered to sell N.S.P. a large quantity of coke that was stockpiled at the Kopper's Coke Plant in St. Paul. After some negotiations, N.S.P. issued a purchase order to E.L.E.S.C.O. for delivery of 10,000 tons of coke, with an expected BTU value of 12,550 per pound. The BTU value was taken from independent testing results on a coke sample appellant submitted to N.S.P. Specific provisions controlled the manner and time of delivery, including conditions on the size of delivery trucks, for weighing purposes. The purchase price was $14.00 per ton delivered.

The seller then contracted with Ray Anderson for delivery of the coke. Anderson hauled coke between January 16 and January 23, 1980, when Anderson cancelled the contract for lack of further uncontaminated coke at the site. E.L.E.S.C.O. then contracted with Albrecht Landscaping for delivery of coke. Albrecht delivered the coke in non-conforming trucks and without meeting the specified schedule.

When the coke began arriving at N.S.P.'s plant, their personnel noticed substantial amounts of foreign material in the material, such as sand, wood and metal. An N.S.P. employee then brought a sample of the coke to the company's laboratory for testing.

Robert Kermes of N.S.P. spoke with Wetherbee concerning the problems with delivery and with quantity. Wetherbee said at that time that the coke conformed to the sample he had given to N.S.P. for independent testing.

Tests of the material conducted by Eugene Wiegele of N.S.P.'s laboratory showed the delivered coke had a BTU value of 5,786 per pound. He also reported a non-burnable ash content of 28.61%; the coke tested earlier had an ash content of about 9%.

After learning the results of the test, N.S.P. orally terminated its contract with appellant. On February 4, 1980, the company sent a written termination notice to E.L.E.S.C.O., providing in part:

> Since the actual quantities available are less than 20% of original Purchase Order specifications and the delivery system has not met specified NSP requirements, this material is unacceptable for delivery to NSP.

Appellant did not request an opportunity to cure the problems.

Later, Albrecht Landscaping, appellant's second hauler, sold N.S.P. 500 tons of coke salvaged from the same site. This coal had a BTU of 9,000 and was priced at $10.00 per ton.

At trial, a jury found that N.S.P. breached its purchase contract and that appellant was entitled to $49,500 in damages. The trial court ordered entry of judgment for E.L.E.S.C.O. on January 23, 1984. On February 7, 1984, N.S.P. served a motion for judgment notwithstanding the verdict. On February 24, the trial court ordered a new

trial on its own motion and ordered the judgment "annulled and rescinded." The court concluded that the verdict was contrary to the evidence and showed bias of the jury toward N.S.P.

In December 1984, this court held that the trial court could not order a new trial on its own initiative more than 15 days after filing an order for judgment. *E.L.E. S.C.O. v. Northern States Power Co.,* 359 N.W.2d 717 (Minn.Ct.App.1984). We reversed and remanded for consideration of the motion for judgment notwithstanding the verdict.

On remand, the trial court granted respondent's motion for judgment notwithstanding the verdict. E.L.E.S.C.O. brought this appeal.

## ISSUE

Was there competent evidence reasonably supporting the verdict, rendering the trial court's judgment notwithstanding the verdict improper?

## ANALYSIS

In its motion for judgment notwithstanding the verdict, N.S.P. claimed that (1) the evidence did not support the jury's finding that N.S.P. breached its contract with appellant; (2) the verdict was inconsistent with the U.C.C.; (3) the evidence conclusively showed that E.L.E.S.C.O. breached its contract, and (4) the jury improperly assessed damages at $49,500.

Under Minn.R.Civ.P. 50.02(1), a motion for judgment notwithstanding the verdict should be granted where the moving party would have been entitled to a directed verdict at the close of the evidence. A directed verdict is proper only where the evidence presented is insufficient to state a prima facie case. *See* Minn.R.Civ.P. 50.01.

■■■ Upon review of a judgment notwithstanding the verdict, this court must apply the same standard used by the trial court. *Edgewater Motels, Inc. v. Gatzke,* 277 N.W.2d 11, 14 (Minn.1979). The evidence and inferences must be viewed in the light most favorable to the jury verdict, *Bergemann v. Mutual Service Insurance Co.,* 270 N.W.2d 107, 109 (Minn.1978), and a contrary judgment should be granted only when there is "no competent evidence reasonably tending to sustain the verdict." *Sikes v. Garrett,* 262 N.W.2d 681, 683 (Minn.1977). The substitute judgment may stand only when "the evidence is practically conclusive against the verdict or that reasonable minds could reach but one conclusion against the verdict." *Brown v. Arthur Schuster, Inc.,* 300 Minn. 106, 110, 217 N.W.2d 850, 853 (1974).

### A. *Terms of the contract*

■■■ N.S.P. introduced its purchase order showing that the coke was expected to have a BTU value of 12,550 per pound. Evidence showed that the expectation was based upon the sample provided by appellant. Appellant argues that because neither party manifested an understanding that the sample was a minimum requirement, the existence of an express warranty was not established. To the contrary, under Minn.Stat. § 336.2–313(1)(c) (1984), a sample which is the basis of an agreement creates an express warranty that the whole of the goods will conform to the sample.

### B. *Seller's performance of the contract*

Substantial evidence at trial showed that the coke appellant delivered did not meet the BTU value specified in the contract. That evidence included test results on coke delivered and testimony from those who saw the material. The only evidence suggesting that the coke conformed to the contract is Earl Wetherbee's testimony that he did not feel it had any deficiencies: "I had no knowledge of it, no, one way or the other." There was no testimony that he had independent, personal knowledge of the quality of the coke delivered under the contract. Wetherbee was appellant's only witness, and there was no other evidence to sustain a conclusion that the coke delivered by appellant met the BTU value specified in the contract.

Appellant argues that Minn.Stat. § 336.2–513(4) (1984) renders N.S.P.'s test results irrelevant or inadmissible, since appellant did not agree that N.S.P. could test the coke upon delivery or that it could test the coke in its own laboratory. Appellant claims that the statute gives exclusive significance to the earlier independent testing of a coke sample. Subsection 2–513(4) provides:

> A place or method of inspection fixed by the parties is presumed to be exclusive but unless otherwise expressly agreed it does not postpone identification or shift the place for delivery or for passing the risk of loss. If compliance becomes impossible, inspection shall be as provided in this section unless the place or method fixed was clearly intended as an indispensable condition failure of which avoids the contract.

Minn.Stat. § 336.2–513(4) (1984). Appellant misinterprets the statute. Uniform Commercial Code Comment 9 to section 2–513 indicates that the preliminary test of a sample is an "examination" and not an "inspection." In addition, Minn.Stat. § 336.2–513(1) (1984) provides:

> Unless otherwise agreed and subject to subsection (3), where goods are tendered or delivered or identified to the contract for sale, the buyer has a right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner. When the seller is required or authorized to send the goods to the buyer, the inspection may be after their arrival.

The parties did not agree on any procedure for inspecting the coke upon delivery. The time and method used by N.S.P. were commercially reasonable.

Upon breach of warranty, respondent was entitled to cancel the contract. Minn. Stat. §§ 336.2–106(4), –612(3), –711(1) (1984).

### C. *Seller's right to cure*

Appellant claims that N.S.P. breached its contract by cancelling the contract without allowing appellant the opportunity to cure the non-conforming delivery by furnishing coke which met the contract.

Section 336.2–508(1) (1984) provides:

> Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

Although the parties argue whether N.S.P. rejected the goods and whether the time for delivery expired, the decisive question is whether appellant "seasonably" notified N.S.P. of its intent to cure. Appellant offered no evidence that it made any offer to cure the poor quality of the coke. Since appellant presented no evidence on this point, it failed to prove its case.

### DECISION

The trial court properly entered judgment notwithstanding the verdict, where there was no competent evidence reasonably supporting the verdict.

Affirmed.