Gary **MACHO**, Appellant,

v.

Bernard **MAHOWALD**, Respondent.

No. C5–85–398.

Court of Appeals of Minnesota.

Sept. 17, 1985.

Review Denied Nov. 4, 1985.

## OPINION

CRIPPEN, Judge.

Appellant Macho brought an action to recover for injuries sustained when he fell off respondent's horse, which bolted immediately after he mounted it. The jury found that Macho was 40% negligent, and that respondent was 60% negligent. The trial court entered judgment notwithstanding the verdict, finding that the facts were insufficient to place respondent on notice that the horse had a dangerous propensity. It further found, pertaining to appellant's claims that the stirrups were not properly adjusted, that the horse bolted as soon as appellant got into the saddle, so there was no chance to adjust the stirrups. We reverse and remand.

## FACTS

Appellant is a heating and air conditioning contractor. He had numerous business dealings with respondent Mahowald, a general contractor. At approximately 4 or 5 o'clock p.m. on the day of the accident, appellant stopped at the Mahowald residence for business and social purposes. They discussed business, visited, and had several beers. Mahowald walked out to the front step with appellant as he was leaving. Mahowald's daughter approached with her horse. On several prior occasions, respondent had invited appellant to ride the horse, but he declined. On the day of the accident, appellant accepted.

Macho mounted the horse; the horse was neither reined nor held. He did not put his feet into the stirrups because they were too short, and respondent did not adjust them because he did not feel it was necessary. Within several seconds, the horse bolted; it immediately went into full gallop towards a tree, approximately 75 to 100 feet away. Appellant hit the tree and fell off the horse, sustaining injuries. The parties speculated that the horse was heading toward an alfalfa field, which was beyond the tree.

Wayne Dordell, St. Paul, Harry F. Christian, LeCenter, for appellant.

Harry A. Cousineau, Jr., Mark A. Gwin, Minneapolis, for respondent.

Considered and decided by CRIPPEN, P.J., and SEDGWICK, and NIERENGARTEN, JJ.

Appellant subsequently learned that there had been a prior incident in which respondent's daughter had been riding the horse, it broke into a run, and she jumped or fell off. Respondent believed that the horse wanted to run to an adjacent alfalfa field at the time of that incident.

Appellant's previous experience with horses included several elk hunting trips in Arizona, where he rode horses in a mountainous area for three or four days on each trip. He also rode horses during a caribou hunting trip, and had ridden a friend's horse on two prior occasions.

Respondent had purchased the horse for his daughter approximately four months prior to the accident. It was ridden by his children approximately three to four times per week. An owner who boarded the horse prior to its purchase by respondent testified that the horse was "easygoing, nice and gentle" and that it had never acted up or caused any trouble. Aside from the above-mentioned incident with the respondent's daughter, there was no evidence of any other problem with the horse.

Two witnesses who were experienced with horses testified as to the importance of having correct saddle equipment when riding. One testified that when he adjusts stirrups, he keeps the horse tied to the hitching rail. Another testified that when stirrups are being adjusted, the horse normally will remain calm, but that it would probably be "beneficial" if someone held him. There was no testimony that such precautions were observed.

The jury found appellant 40% negligent and respondent 60% negligent and awarded appellant $47,300. After judgment was entered, upon motion of respondent, the court entered judgment notwithstanding the verdict. This appeal followed.

## ISSUES

1. Was the evidence of the prior incident sufficient to raise a jury issue as to whether the horse had dangerous tendencies and respondent knew of them?

2. Was evidence of respondent's failure to use proper safety precautions sufficient to raise a jury issue as to respondent's negligence?

## ANALYSIS

Under Minn.R.Civ.P. 50.02(1), a motion for judgment notwithstanding the verdict should be granted when the moving party would have been entitled to a directed verdict at the close of the evidence. A directed verdict is proper only when the evidence presented is insufficient to state a prima facie case. Minn.R.Civ.P. 50.01.

■■■ Upon review of a judgment NOV, this court must apply the same standard as the trial court did in passing on the jury verdict. *Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 14 (Minn.1979). The evidence and inferences must be viewed in the light most favorable to the jury. *Bergemann v. Mutual Service Insurance Co.*, 270 N.W.2d 107, 109 (Minn.1978). The judgment should be granted only when there is "no competent evidence reasonably tending to sustain the verdict." *Sikes v. Garrett*, 262 N.W.2d 681, 683 (Minn.1977). The order granting the judgment may stand only when "the evidence is practically conclusive against the verdict or that reasonable minds could reach but one conclusion against the verdict * * *." *Brown v. Arthur Schuster, Inc.*, 300 Minn. 106, 110, 217 N.W.2d 850, 853 (1974).

Appellant alleged respondent was negligent in three ways: (1) failure to warn of the horse's dangerous propensities; (2) failure to adjust the stirrups properly; and (3) failure to provide a saddle of the correct size.

■■ 1. An owner of an animal is liable for injuries caused by the animal if the animal has dangerous or vicious tendencies, the owner had knowledge of the animal's dangerous propensities, such as would put a reasonable person on guard, and he neglects to act to prevent the risk of damage. *Harris v. Breezy Point Lodge, Inc.*, 238 Minn. 322, 325–26, 56 N.W.2d 655,

658 (1953); *Hagerty v. Radle,* 228 Minn. 487, 502, 37 N.W.2d 819, 828 (1949).

■ A dangerous or vicious propensity is defined as:

> a propensity or tendency of an animal to do any act that might endanger the safety of the persons and property of others in a given situation; and any propensity on the part of a domestic animal, which is likely to cause injury to human beings under the circumstances in which the party controlling the animal places him, is a dangerous or vicious propensity. It is not enough that there be potential danger, but there must be propensity, that is, a natural inclination to be dangerous.

3A C.J.S. *Animals* § 180 at 674 (1973) (footnotes omitted). Historically, Minnesota courts have viewed horses as domestic animals. *Clark v. Brings,* 284 Minn. 73, 76–77, 169 N.W.2d 407, 410 (1969).

The parties do not dispute the fact that respondent offered no warning, thereby neglecting to act to prevent the risk of harm, and that he knew of the previous incident. The issue that arises is whether the previous incident of the horse's rebellious behavior constitutes sufficient evidence that the horse had dangerous tendencies and that respondent had notice. The trial court found the incident insufficient, such that a jury could not find respondent negligent.

■ We disagree. The previous incident was the kind of evidence from which the jury could have found that the horse had a propensity to be dangerous. *See Harris,* 238 Minn. at 325–26, 56 N.W.2d at 657–58; *Doe v. Barnett,* 145 Ind.App. 542, 551, 251 N.E.2d 688, 694 (1969). Even one previous incident is sufficient to take the case to the jury. *Flynn v. Lindenfield,* 6 Ariz.App. 459, 461, 433 P.2d 639, 641 (1967).

2. Was there sufficient evidence of negligence to support the claim that respondent failed to properly restrain the horse for adjustment of the saddling equipment or was negligent in allowing appellant to use a saddle that was too small?

The respondent contends that these issues were not raised prior to appeal. However, there was testimony on these issues, and respondent referred to them in closing arguments.

The trial court stated in its memorandum accompanying its order granting the judgment:

> With respect to the Plaintiff's claims the stirrups were not properly adjusted, this was evident to the Plaintiff, and the stirrups are normally adjusted with the rider in the saddle. The evidence here shows the horse bolted as soon as the Plaintiff got into the saddle and there was no chance to adjust the stirrups.

Two experienced horsemen testified as to the importance of having correct saddle equipment with proper adjustments, and that it is important to have someone or something hold the horse in a stationary position. It is also important that the rider be on the horse to adjust the stirrups properly.

■ Whether appellant failed to ensure that the stirrups were properly adjusted goes to his negligence, but does not show respondent's lack of negligence. The jury took appellant's negligence into account when it found him 40% negligent. That the horse bolted as soon as appellant mounted, so that respondent had no chance to adjust the stirrups, does not absolve respondent's negligence; rather, it tends to show his negligence.

The jury could have properly found that both appellant and respondent were negligent in failing to adjust the stirrups and that respondent was negligent in failing to hold the horse in a stationary position to adjust the stirrups. We agree that the evidence on the proper saddle had little weight, but in view of the other grounds from which the jury could have found negligence, we do not find it necessary to further review the issue.

## DECISION

We reverse the trial court's judgment NOV, and reinstate the jury verdict, finding that there was sufficient evidence to present a jury issue on the negligence of the respondent.

Reversed and remanded.

SEDGWICK, J., dissents.

SEDGWICK, Judge (dissenting).

I respectfully dissent. Keeping in mind the narrow parameter for upsetting a jury verdict, the trial court properly granted judgment notwithstanding the verdict. One prior incident of a horse running to an alfalfa field does not constitute a vicious propensity in the animal, nor can it possibly give rise to a duty to warn. Unlike kicking, biting, bucking or other antisocial attributes for a horse, its desire to eat alfalfa, even with a rider on its back, is at most a "potential danger" to a rider.

> It is not enough that there be a potential danger, but there must be a propensity, that is, a natural inclination to be dangerous.

3A C.J.S. Animals § 180 (1973).

This case was not pled on a common law scienter theory. It was premised solely on negligence, so that appellants may recover without showing viciousness of the horse and scienter. *Ryman v. Alt*, 266 N.W.2d 504, 508 (Minn.1978). But they must show a duty on respondent and a breach of that duty. We agree with the trial court that:

> The only possible evidence to find the Defendant guilty would be knowledge of the dangerous propensity of the horse caused by the horse on one occasion running into an alfalfa field while being ridden by Defendant's daughter, at which time she either jumped off or was thrown off. This was insufficient to place the Defendant on notice the horse was likely to bolt as it did when the Plaintiff mounted the horse. The fact the Defendant continued to allow his children to ride the horse is persuasive evidence he did not regard the animal as dangerous.

The one incident did not give rise to a duty to warn. Absent this duty there was no negligence.

The balance of the trial court's memorandum stated:

> With respect to the Plaintiff's claims the stirrups were not properly adjusted, this was evident to the Plaintiff, and the stirrups are normally adjusted with the rider in the saddle. The evidence here shows the horse bolted as soon as the Plaintiff got into the saddle and there was no chance to adjust the stirrups.

The order granting JNOV should stand only when the evidence is practically conclusive against the verdict or reasonable minds can reach but one conclusion against the verdict. *Brown v. Arthur Schuster, Inc.*, 300 Minn. 106, 110, 217 N.W.2d 850, 853 (1974). Even with the high standard there is insufficient evidence to find respondent negligent.

Similar cases from other jurisdictions support the trial court's determination.

In *Vigue v. Noyes*, 113 Ariz. 237, 550 P.2d 234 (1976), an unattended horse kicked a child in the head in a corral. The supreme court found that the fact that the horse damaged his stall by kicking flies, ate well, occasionally "crowhopped" (stopped suddenly with stiff front legs) causing the rider to slide, and acted "funny" on the day of the accident, did not establish viciousness. Plaintiff never showed that the horse's behavior was a normal harm which defendant should have foreseen, so the supreme court affirmed JNOV in favor of all defendants.

A riding stable was not negligent for an injury which occurred when a riderless horse encouraged plaintiff's horse to take off and plaintiff, an experienced rider, fell. There was no claim of viciousness. *Hojem v. Kelly*, 21 Wash.App. 200, 584 P.2d 451 (1978).

In *Appel v. Heinsohn*, 91 A.D.2d 1029, 458 N.Y.S.2d 619, *aff'd*, 59 N.Y.2d 741, 450 N.E.2d 247, 463 N.Y.S.2d 441 (1983), no negligence was found when plaintiff fell off a horse, since plaintiff failed to prove

viciousness. The fact that the horse did not follow plaintiff's directions on that occasion was insufficient to prove the horse was unsuitable for riding.

On the other hand, negligence was a jury question where the keeper knew the horse had a tendency to rear and failed to warn plaintiff or his daughter until they mounted the horse, 15 seconds before the accident. *Bocker v. Miller,* 213 Cal.App.2d 345, 28 Cal.Rptr. 818 (1963).

The trial court should be affirmed.